## KEYSTONE LUMBER YARD v. YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY.

### [50 South. 445.]

1. **EQUITY JURISDICTION.**  *Discovery.  Statutory modes of making proof. Effect.*

   Original equity jurisdiction of bills for discovery is not taken away by statutes simply providing other means of proving the facts sought to be discovered.

2. **SAME.**  *Same.  Constitution 1890, sec. 160.  Complete relief.*

   Where the chancery court takes jurisdiction for the purpose of discovery, it may grant full relief in the case, under the power conferred by Constitution 1890, sec. 160, providing that, where the court heretofore exercised jurisdiction auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted, or the legal title established by suit at law.

3. **SAME.**  *Same.  Same.  Railroads.  Reciprocal demurrage.  Penalties.*

   Reciprocal demurrage charges, if penalties at all, are statutory penalties, and not penalties created by contract; and hence, where the chancery court has taken jurisdiction for the purpose of discovery, sought in a bill to compel the carrier to pay such charges, it will grant full relief by a decree for the amount proved.

FROM the chancery court of Yazoo county.

HON. G. GARLAND LYELL, Chancellor.

The Keystone Lumber Yard, a corporation, appellant, was complainant in the court below; the railroad company, appellee, was defendant there.  From a decree sustaining defendant's demurrer to the bill, and dismissing the suit, the complainant appealed to the supreme court.

The opinion of the court sufficiently states the facts.  The

decree of the court below contains the following:—"The court is of the opinion that the defendant company cannot be compelled to discover as prayed for by the bill, because such discovery will subject defendant to the imposition of penalties, hence the demurrer is sustained and the complainant's bill is dismissed without prejudice to the complainant's right to proceed at law."

For prior litigation relative to the matter here in controversy, see *Keystone Lumber Yard v. Yazoo, etc., R. Co.,* 94 Miss. 192, 47 South. 803.

*Brown & Norquist,* for appellant.

The precise question involved here is, whether equity will enforce a discovery of the cause of delay in the transportation of car load lots of freight, when such discovery will subject defendant to the reciprocal demurrage charge fixed by the state railroad commission, or, whether such discovery will be denied, on the theory that "courts of equity * * * undertake to disregard and nullify, by refusing their aid in proper cases, the expression of the will of the lawmaking power," under the pretext that such charges are "fines and penalties." We submit that no such rule of equity exists, or ever did exist. The contention to the contrary is based upon the expression, "these rules for affixing penalties for undue detention of the cars, were not devised for the benefit of the railroad company alone," in reference to demurrage charges due the railroad companies, to be found in the opinion of the court in the *Searles case,* 85 Miss. 543, and the quotation thereof in the *Keystone Lumber Yard case,* 90 Miss. 406, although the court, in the latter case, on page 407, repudiated the suggestion that they were "fines and penalties," and although the word "penalties," in the first instance, was evidently used in its general sense.

The reciprocal demurrage charges are, of course, no more penalties than are demurrage charges. The one is compensa-

tion for undue delay in transit, the undue detention of the shipper's property; and the other is compensation for undue delay in unloading, the undue detention of the railroad's property. If there were no demurrage charges fixed by law, shippers could be made to pay for the damage ensuing from undue delay in unloading; if there were no reciprocal demurrage charges fixed by law, a railroad company could still be made to pay for the damages ensuing from undue delay in transportation. Both are alike founded in the soundest common sense and highest spirit of equity. Each is equitable compensation, the one no less than the other.

There can be no doubt that courts of equity will enforce discovery which falls short of subjecting the defendant to prosecution for a public offense or indictable crime, even though it compel the disclosure of fraud or the basest moral turpitude. *Watts v. State,* 24 Miss. 77.

It never was the law that a discovery would be denied in equity simply because it would enable the complainant to recover, or the defendant to defeat, the debt or demand sued for. It must subject to the loss or forfeiture of something distinct from, or collateral to, that which is sued for, or subject the party defendant to a penalty or indictment. *Conant v. Dolafield,* 3 Ed. Ch. 201; Hare on Discovery, part 3, par. 1; *Sharp v. Sharp,* 3 Johns. Ch. 407.

Equity will enforce a contractual forfeiture, whenever the jurisdiction attaches on some ground independent of such relief, as in the case of a clear legal right to the forfeiture, where the legal remedy is inadequate. *Vicksburg, etc., R. Co. v. Ragsdale,* 54 Miss. 208. The legal remedy here is inadequate, because the discovery is essential to its enforcement. The penalties which equity will not enforce are those fixed by contracts of the parties, and not those fixed by statute. *Lafayette County v. Hall,* 70 Miss. 678. Nor will it decline to enforce a claim for liquidated damages, although, in a generic sense, such may be termed a penalty. Pomeroy, Eq. Juris. 440.

At first blush, the case of *Mississippi Railroad Commission v. Gulf, etc., R. Co.,* 78 Miss. 750, may seem to conflict with *Lafayette County v. Hall, supra,* but it does not. In the latter case the penalty was in the nature of liquidated damages, as well as statutory, like unto damages for delinquency in the payment of taxes. *Burlington v. Burlington R. Co.,* 41 Iowa, 134. In the former case, the penalty was under Code 1892, § 4329, for the commission of a public offense—a pure penalty, under a penal law, and not simply in the nature of a penalty. *Huntington v. Attrill,* 146 U. S. 657; *Wisconsin v. Pelican Insurance Co.,* 127 U. S. 265; *Green v. Weaver,* 1 Sim. 404.

*Mayes & Longstreet,* for appellee.

It is patent that the demand sued on is purely legal. This is a suit merely to recover penalties, alleged to be due under the demurrage rules of the state railroad commission. The bill itself is practically in the form of a declaration at law, and the right, if any, is at law, the remedy in the law courts being entirely sufficient and adequate.

Section 147 of the present constitution of Mississippi of 1890 was not enacted to vest in the chancery court any special jurisdiction not possessed by that court under its ancient and original equity jurisdiction, except insofar as jurisdiction of certain other subjects is added to this original jurisdiction of such court by other constitutional provisions, or by statutes of the legislature not necessary here to consider.

The constitutional section never abolished the distinction between the chancery and the law courts. Demands at law are no more cognizable in equity, as a general rule, now, than they were prior to the adoption of the constitution of 1890.

Section 147 of the state constitution merely deprives this court of the power to reverse on a mistake in jurisdiction made by either the circuit or the chancery court in retaining causes until final judgment or decree in the lower court.

According to the interpretation of that section by this court, if the chancery court shall hold jurisdiction of a cause purely

legal and render final decree, such a mistake by a chancellor would not warrant the reversal of the decree by this court; and the same is true where a circuit court, through mistake or misapprehension of the law, holds a case of pure equity nature in the law court until final judgmnet.

In the case of *Cazeneuve v. Currell,* 70 Miss. 524, this court declares that while the law and equity courts are still distinct jurisdictions, yet the judges and chancellors of the state may, by mistake of law or equity, practically obliterate the demarcation between law and equity courts, merely by failing to observe the distinguishing lines between the jurisdictions of the two courts.

And it is further held in the same opinion, which was the first full construction of section 147 of the Mississippi Constitution, that the only inhibition of section 147 is against reversal by the supreme court on account of a mistake as therein specified touching jurisdiction, made by either the chancery or the circuit court.

In the case of *Illinois, etc., R. Co. v. LeBlanc,* 74 Miss. 650, the circuit court, a pure law court, actually entertained and tried the form of an action of ejectment, a proceeding in the nature of a *quia timet* proceeding, and yet this court declared that by reason of section 147 of the Mississippi Constitution, the judgment of the circuit court could not be reversed on the sole ground of want of jurisdiction of the law court.   See also *Adams v. Bank,* 74 Miss. 307.

In the case at bar, the objection to the jurisdiction of the chancery court was made by demurrer properly and timely by the defendant, and the chancery court holding the demurrer to be well taken and sufficient, and that the demand was purely a legal one, declined to entertain or to assert jurisdiction over the cause, and dismissed the bill without prejudice to the complainant's right to a remedy at law.

This court in *Carbolineum Co. v. Myer,* 76 Miss. 568, ex-

pressly approved an action of this character on the part of a chancellor who was persuaded that the chancery court possessed no jurisdiction of the particular right sought to be enforced through its instrumentality.

The present case is one, not where the court entertained jurisdiction of the cause and entered a final decree which cannot be reversed by this court on the ground of a mere mistake in jurisdiction, as between common law and equity, but it is one where no mistake has occurred, where the chancellor recognized the lack of jurisdiction in the equity court, and where he refuses to entertain the cause and dismissed the bill without prejudice to complainant's right to sue in the proper court at law

For many years the courts stressed and observed the maxim that a court of chancery abhorred penalties and forfeitures, and a decree for one or the other was rarely entered in the chancery court, except where the equity court, acquiring jurisdiction on an independent and original equity, assumed and exercised jurisdiction over the whole cause and all its details and stood ready to enter a decree if the main equity was established, that would answer the ends of justice and dispose of the whole case and every issue in it.

This has been the rule in Mississippi, and is today the rule of proper chancery practice.

In the case of *Lafayette County v. Hall,* 70 Miss. 678, this court says that the chancery court having acquired jurisdiction "may give full relief by following the law and enforcing the penalties. Legal remedies are constantly being wiped out in courts of equity in causes where jurisdiction is acquired on some recognized ground of equitable interference."

It is true that in this opinion the court says that it is not a sound argument that equity will always refuse its aid in the enforcement of penalties, and a distinction is drawn between cases where statutory penalties are demanded and penalties created by contract are sought to be recovered.

The court asserts that while equity will refuse to enforce penalties growing out of contracts between the parties, it will not decline to enforce statutory penalties which are incidental to some other fact or condition, but notwithstanding this clear distinction is drawn, the court does adhere to the proposition that full equity jurisdiction must be in the court on some ground independently of the mere effort to collect penalties. The decree for the penalty must be an incident, an essential one, to full effectuation of the original equity of the case.

Whitfield, C. J., delivered the opinion of the court.

The bill filed in this case was for discovery, and for a decree for the amount of reciprocal demurrage charges; in other words, for full relief. A demurrer was interposed on the ground that to compel the defendants to discover would subject them to the payment of penalties, and that it was an attempt to enforce a penal action in a chancery court. Relief by way of discovery was grounded upon this allegation in the bill: "That complainant is informed and believes, and therefore charges, that each of said cars was unreasonably detained by reason of being switched while in transit to some track between points of origination and destination, but of this the complainant has not the means of proof at his command, but which proof is wholly within the knowledge of the defendant." The bill covers a period from September 21, 1907, to May 10, 1909, inclusive, in which it is charged that a very large number of shipments had been delayed. The chancellor sustained the demurrer, but on the ground alone that penalties could not be recovered in the chancery court, as shown by his decree, and dismissed the bill.

The first proposition urged in support of this decree is that the plaintiff's remedy was at law; that he could have had the witnesses summoned and all the documentary evidence secured by *subpoenas duces tecum;* and that the chancery court had no jurisdiction of this bill for discovery. This contention cannot be maintained. In *Millsaps v. Pfeifer,* 44 Miss. at page 807,

the court said: "It is more than probable that the court below acted under the belief that, inasmuch as the defendants, under the statute of November 25, 1861, could have taken the testimony of the complainants in the original bill, there was no necessity for a cross-bill. Even conceding this to be true, it did not justify the court in sustaining the demurrer and dismissing the cross-bill. This act does not oust the court of chancery of its original jurisdiction of cross-bills, when filed for discovery only. It furnishes a cumulative mode of obtaining the testimony of the complainants in the original bill, and does not take from that court the right to entertain such bills; even when they call for discovery alone, and much less when they call for both discovery and relief, as in the present case. The defendants, therefore, had their election, either to take the testimony of the plaintiffs in the original bill under the statute, or to obtain discovery from them by cross-bill." This was a square holding that, even if the bill were for discovery alone, the fact that the plaintiff might have examined the witnesses and secured documentary evidence at law did not oust the chancery court of its original jurisdiction to entertain the bill for discovery. And this was the law prior to the Constitution of 1890.

But section 160 of that instrument has "lifted the jurisdiction in equity in this class of cases far above the region of doubt," as said in *Woods v. Riley,* 72 Miss. at pages 76 and 77 (18 South. 384). In the last clause of that section it is provided: "In all cases where said court heretofore exercised jurisdiction auxiliary to courts of common law, it may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by the suit at law." And the court said: "Clearly the relief sought by the complainant in this cause is such as falls within the auxiliary or ancillary jurisdiction of equity, and which, under the former practice in equity, was generally withheld until the right at law had been established, but, which, under the modern prac-

tice, was frequently afforded. The Constitution not only destroys the obstacle which had formerly existed to the exercise of this auxiliary relief, but, as to the cases falling within paragraph 'f' of section 159, section 160 confers jurisdiction upon courts of equity to try legal as well as equitable titles. If a court of law first acquires jurisdiction, equity may, without awaiting exhaustion of the legal. remedy, afford auxiliary aid. If the court of equity first acquires jurisdiction, it may proceed to final and complete relief, though the titles and rights involved are of a legal, as distinguished from an equitable, character." These two opinions settle beyond controversy the question that the chancery court has jurisdiction to entertain a bill for discovery, although the complainant may have a legal means of obtaining proof. And they settle the further proposition that now, under section 160 and the Constitution of 1890, wherever the chancery court has entertained jurisdiction for the auxiliary purpose of discovery, it may go on and administer complete relief in the case.

The second proposition contended for in support of the decree is that equity has no jurisdiction to enforce penalties, and this was the ground on which the chancellor proceeded. Whether or not reciprocal demurrage charges are penalties in any proper legal sense admits of grave doubt; but that we do not now decide. It is certain that, if they are, they are penalties imposed by authority of law, and not penalties arising out of contract; and hence the court, having taken jurisdiction for the purpose of discovery, had the power to proceed and administer complete relief by decreeing for the amount of the reciprocal demurrage charges, if the evidence should sustain the allegations of the bill in that regard. In *Lafayette County v. Hall,* 70 Miss. 678, 13 South. 39, this court said, on that proposition: "Equally untenable is the position, assumed by counsel for appellees, that equity will refuse its aid in the enforcement of penalties. The unsoundness of this view lies in the failure to mark the distinction between statutory penalties and penalties

created by contract between private persons. The latter our courts of equity refuse to enforce, but the former, the expression of the will of the lawmaking power, the courts of equity will not undertake to disregard and nullify by refusing their aid in proper cases. 1 Pom. Eq. Juris. § 458; Story, Eq. Juris. § 1326; *State v. McBride,* 76 Ala. 51; *Clark v. Barnard,* 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780. Having acquired jurisdiction, the court below should have given full relief, by following the law and enforcing the penalty. Legal remedies are constantly being worked out in courts of equity in causes where jurisdiction is acquired on some recognized ground of equitable interference."

It follows, for these reasons, that the decree of the chancellor is reversed, the demurrer overruled, and the cause remanded for answer, to be filed within thirty days from the filing of the mandate in the court below.                 *Reversed.*