# Fairford Lumber Co. *v.* Tombigbee Valley R. R. Co.

## *Assumpsit.*

(Decided Feb. 10, 1910. 51 South. 770.)

*Carriers; Freight; Overcharge; Complaint.*—Where the action is against the carrier to recover overcharge of freight, a count alleging that defendant was a common carrier, and undertook to haul certain logs for plaintiff at a given price, but instead of charging the price stipulated for the hauling, defendant extorted an excessive rate, and refused to haul and deliver the logs to plaintiff, except upon payment of such excessive rate; that plaintiff offered

to pay the price stipulated, and demanded that the logs be hauled at such rate, but defendant refused to do so, and plaintiff was compelled to pay the excessive and illegal rate, in a stated amount, in order to have the freight moved, and that plaintiff paid such sums under protest, reserving the right to recover the overcharge, and paid to defendant a named sum which was more than the proper and contract price; and that defendant extorted from plaintiff the sum named, which defendant refuses to pay back to plaintiff, states a good cause of action.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by the Fairford Lumber Company against the Tombigbee Valley Railroad Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Count 2 is as follows: "Plaintiff claims of the defendant the sum of $452.38, with the interest thereon since the 13th day of September, 1906, to wit, that on and prior to, to wit, the 8th day of August, 1906, and during the month of August, 1906, the defendant was a public service common carrier corporation operating a line of railroad in this state, from Nannahubba Bluff, in Mobile county, by way of Fairford, thence northwardly to the northern portion of Washington county, Alabama, and that prior to the said 8th of August, 1906, the defendant undertook and agreed to carry, haul, or ship over said railroad between certain points in Washington county, Alabama, and Fairford, Alabama, the logs to supply plaintiff's sawmill at Fairford, Alabama, at the rate or charge of $1.50 per 1,000 feet on the basis of the cut of the mill, and that during the month of August, 1906, aforesaid, a large lot of logs were hauled from the woods to the mill of the plaintiff at Fairford by and over the said railroad, but the said defendant company, instead of charging this plaintiff the agreed and stipulated freight rate, did extort from it freight rate of $6 per car, and refused to haul or de-

liver the logs unless the plaintiff would pay such un-
reasonable and extortionate charges. That thereupon
this plaintiff offered to pay the reasonable, customary,
and contracted-for charges, and demanded that the logs
be hauled to the mill by the defendant company for
such freight charges, which the defendant company re-
fused to do, and the plaintiff was compelled to, and did,
pay such extortionate, unreasonable, and illegal rate to
the amount of $462.28, as aforesaid, in order to have
the freight moved over the line of the defendant com-
pany, and that the plaintiff paid such extortionate and
improper charges under protest, reserving to itself the
right to recover back the amount of overcharges so ex-
torted by it from the defendant railroad company, and
that the plaintiff paid to the defendant in the manner
aforesaid, for logs hauled to the mill during the month
of August, 1906, the enormous sum of $1,056, which it
avers was $462.28 more than the proper and contracted
charges or rate for the logs hauled over and by the rail-
road, and delivered to the mill during the said month
of August, 1906. That the defendant thereby wrong-
fully, unjustly, and without right extorted from the
plaintiff the sum of $462.28, which sum is now justly
due, with interest thereon since the 13th day of Septem-
ber, 1906, from the defendant to the plaintiff, and which
the defendant refuses to pay the plaintiff." The third
count was for money had and received. The fourth
count was for money received by the defendant for use
of the plaintiff. Count 1 set forth the same facts as
stated in count 2, alleging that, beginning August 8,
1906, the defendant breached the contract, and in vio-
lation of its terms, although the contract then existed
between plaintiff and defendant, did thereafter, during
the month of August, 1906, take and demand from the
plaintiff freight money upon the basis of $6 for each

[Fairford Lumber Co. v. Tombigbee Valley R. R. Co.]

car hauled, instead of the correct charges, naming the sums as set out in the second count, and that it was done for the purpose of increasing illegally the charge for the transportation of the said freight, and that the said overcharge was made without any authority of law.

The demurrers to the first and second counts were that it appeared from said counts that the said alleged agreement for special contractual price was violative of the law, opposed to public policy, and void as a discriminating rate, less than and different from the rate applicable for like service to the general public; (2) because said counts do not show that the plaintiff made any legal tender to defendant of the lawful rate of freight for such hauling prior to or at the time said service was required; (3) because said count alleges only an offer to pay the reasonable, customary, and contracted-for charges, without showing that any amount was legally tendered, and without showing what specific amount was tendered, so that issue may be taken upon the facts of such tender.

Count 5, after stating the facts set out in count 2, and alleging the amount exacted, and the amount due, and the difference, alleges that the difference was wrongfully exacted by reason of defendant's coercive power as a common carrier, upon whose services this plaintiff was depending for the carrying forward of its said business. The count then points out the peculiar conditions and circumstances of the shipper, in that its freight does not fall within any class or designation of freight rates named in any published tariff of defendant, posted in its freight depots as required by the statutes; that said logs were not hauled to said mills from any designated point or points along said railroad, but were taken up from the woods in many and varying

places.  It is then alleged that no provision is made, nor is any rate of freight named, for that class of freight, carried as it was under the circumstances of this case.  It is then alleged that the foregoing said contract effects no unjust or repressive discrimination against any shipper upon said railroad, or any class of persons, or any persons, who would, in the absence of discrimination, be shippers over the said road.  Count 6 is substantially the same as 5, as is the seventh, except that it is alleged, in addition, that the railroad is operated under a charter from the state of Alabama, and wholly within the boundaries of the state.  Count 9 is similar to count 2, with the additional allegation that the railroad is operated under a charter from the state, and wholly within the boundaries of the state.

Demurrers were interposed to these latter counts: (1) Because it does not appear from said count that the sums of money paid by plaintiff, and for the recovery of which this action is brought, were paid under duress, or under any mistake of fact; (2) because it states only a conclusion as to a breach of the contract; (3) because it alleges no mistake of fact, or false or fraudulent misrepresentation on the part of the defendant to induce such payment; and numerous other grounds raising the proposition of discrimination, on the fact that the peculiar situation or condition of the plaintiff was not a good ground for making discrimination.

Counts 10 and 11 set up the contract, inducements to make the contract, and the erection of the mill and the purchase of the land on account thereof, and then make the allegations contained in the other counts. The pleas are sufficiently set out in the opinion.

FITTS & LEIGH, for appellant.—Unless illegality is apparent on the face of the complaint it was not the

subject-matter of demurrer but of plea.—*Nelms v. Edinburg A. L. M. Co.,* 92 Ala. 157. There is nothing in the statute law of the state as disclosed by the complaint showing that the contract sued on was void as opposed to public policy, or that it is in contravention of any of the statutes.—Sections 3460 and 3461, Code 1896. The presumption is in favor of the legality of the contract, and the party affirming illegality must show it by clear evidence.—*Ware v. Jones,* 61 Ala. 295. The Mississippi Code contains very similar provisions, and attention is called to a construction thereof in the following case.—*Laurel Cotton Mills v. G. & S. I. R. R. Co.,* 84 Miss. 339. Industrial enterprises include all kinds of manufactures.—*L. & N. R. R. Co. v. Fulgham,* 91 Ala. 555; *Beggs v. E. E. I. Co.,* 96 Ala. 295. If there was an unlawful reduction in favor of the plaintiff, that is a matter of affirmative defense which must be raised by appropriate pleas showing that the railroad had published its schedule of rates, that a reduction of said rates was made in plaintiff's favor, and was not in the development of an industrial enterprise. This case must be treated as if section 3462 was not in the Code, and the parties must rely on their rights at common law. That the contract was not void at common law, see.—28 Am. St. Rep. 142; 42 Am. St. Rep. 712; 4 E. & I. App. 238; 26 Am. Rep. 731. The plaintiff offered the freight under the agreement and the defendant declined to carry it, and hence, there was no need of the tender of the money.—*Root v. Johnson,* 99 Ala. 90. The objection that the complaint fails to show that the money was paid under duress is not tenable.—*M. & M. R. R. Co. v. Steiner, et al.,* 61 Ala. 559; *C. & A. R. R. Co. v. C. B. & W. Coal Co.,* 79 Ill. 121; *Southern Ry. Co. v. Anniston F. & M. Co.,* 135 Ala. 315. The fact that the company afterwards adopted and published a higher

schedule of rates, could not have the effect of annulling the contract.—110 S. W. 38.

GREGORY L. & H. T. SMITH, for appellee.—The plaintiff had the benefit under the 12th and 13th counts of all the matters set out in the other counts, and hence, any error thereto was without injury.—*L. & N. v. York*, 128 Ala. 305; *Carlton v. C. of. Ga.*, 46 South. 595. Plaintiffs offered no evidence in support of this complaint, and hence, the allegations of the count to which demurrers were sustained could not have been sustained upon the trial. Hence, no injury resulted from that trial.—*Garth v. N. A. T. Co.*, 148 Ala. 96. A refusal to take issue on the plea of the general issue amounts to a confession that plaintiff cannot support his complaint. —*Watson v. B. R. & T. Co.*, 150 Ala. 322. The freight rate feature of the contract was not assignable, as is shown by the terms of the contract. When rights arising out of a contract are coupled with obligations to be performed by the contractor, and involve such relation of personal confidence, it must have been intended that the rights should be exercised, and the obligations performed by him alone, and the contract including both his rights and his obligations cannot be assigned without the consent of the other party to the contract.—133 U. S. 488; 152 U. S. 634; 127 U. S. 397; 67 Am. St. Rep. 357; 48 N. W. 79; 44 N. W. 363; 4 Cyc. 22; 2 A. & E. Ency. of Law, 1037. The use of the word, "assigns," does not render the contract assignable.—59 Atl. 111. The railroad company never became a party to the contract on which the action is based, and no novation is shown. The contract on which the cause is based is against public policy and void because it calls for a discriminating rate of freight charges.—Sec. 3462, Code 1896; Sec. 245, Const. 1901; Sec. 5551, Code 1896; 118

[Fairford Lumber Co. v. Tombigbee Valley R. R. Co.]

Ill. 250; 3 N. E. 907; 7 Atl. 809; *Southern Ry. v. Harrison,* 119 Ala. 539.   Notwithstanding the contract might have been lawful when executed, it may be invalidated by subsequent law.—13 L. R. A. 70; 11 L. R. A. 246.   A special rate is void at common law.—13 L. R. A. 70; 11 L. R. A. 246; 37 N. J. L. 531; 43 Ohio St. 571; 16 Am. St. Rep. 599; 118 Ill. 250.   The money paid and sought to be recovered was paid voluntarily and cannot be recovered.—*Pritchard v. Sweeney,* 109 Ala. 651. Plaintiff having repudiated the contract, is estopped to claim that the same is in force, and to base an action thereon.—*Levy v. Lach,* 88 Ala. 290; 16 Cyc. 791.

MAYFIELD, J.—The case made on appeal is stated by appellant as follows: "The complaint as originally filed contained four counts, the last two of which were the common counts, and during the progress of the cause were stricken out by the plaintiff.   Demurrers were sustained to the first and second counts, and plaintiff amended by filing additional counts numbered 5, 6, 7, 8, and 9, to which demurrers were likewise sustained.   Plaintiff again amended its complaint by filing counts 10, 11, 12, and 13.   Demurrers were sustained to counts 10 and 11, and overruled to counts 12 and 13. To counts 12 and 13 defendant pleaded the general issue and eight special pleas.   After demurrers had been overruled to plea 3 and sustained to the balance of the special pleas, defendant filed special pleas, A, B, C, D, and E.   Demurrers were overruled to pleas A, B, C and E, and sustained to plea D.   The action of the court in sustaining demurrers to the first, second, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh counts of the complaint, and in overruling demurrers to the special pleas 3, A, B. C, and E, constitute the only assignments of error."   While a contract is made the basis of the ac-

tion, the suit is not one claiming damages for a breach of the contract, or for compensation as for performance; but is merely to recover money paid the defendant by plaintiff as overcharges for hauling logs under the contract made the basis of the suit. Therefore the complaint, to state a good cause of action, must show that the charges paid for freight were excessive or unreasonable. To show that the amount paid was greater than that contracted to be paid without more is not sufficient, when the action is to recover money paid as for excessive freight charges, and not as for breach of contract. The complaint must also show that the payments were necessary in order to induce the railroad company to do that which it was bound to do without the excessive payment, and for the refusal to do which an action on the case might have been maintained—that is, it must be made to appear that the railroad company had breached its public duty as a common carrier in refusing to carry the logs at the contract price. A mere breach of contract is not sufficient to support this action to recover the money paid in excess of the contract price. It must be made to appear that the money was not paid voluntarily under a new contract made after a refusal on the part of the railroad company to carry under the first contract. In other words, the contract of shipment must be shown to be one authorized or provided by law, so that a failure to perform it would be a breach of duty owing the public, and plaintiff, as one of the public, by the common carrier.

It is true, as has been well said by this court in an early case (*M. & M. Ry. Co. v. Steiner, McGhee & Co.*, 6 Ala. 595), that common carriers, such as railroads and shippers, are in no sense on equal terms; that railroads have so expedited and cheapened transportation as to practically drive from the domain all competitors

in transportation. The public is now left no discretion but to patronize them or to go out of business and suffer irreparable injury and loss. Railroads can and do establish rates and charges, and the public must of necessity pay, or forego the facilities and benefits which the railroads alone can furnish during this improved age of steam and electricity. For the shipper to object or protest would be an idle waste of words. He must pay the price demanded, or he is of necessity denied the right of transportation. This being the only and exclusive means of transportation, the shipper must accept it or suffer great losses. The law, however, attempts to afford a remedy, and if the carrier takes advantage of the shipper's necessity, and demands unreasonable, exorbitant, or excessive charges, and the shipper is compelled to pay same in order to be served by this public service corporation, the carrier will be held liable to the shipper for the excess over and above reasonable charges, and will hold such excess for the use and benefit of the shipper, and it may in such case be recovered in an action for money had and received. See, also, *Parker v. Great West. Ry. Co.,* 7 Man. & G. 283.

At common law common carriers were thus bound to accept and carry all who conformed to reasonable rules, and could lawfully charge or receive only a reasonable compensation therefor; but at common law the carriers were not required to treat all persons or shippers alike —that is, to carry all for the same price. They could carry their friends or favorites at lower rates than they charged the public, provided, however, the rates charged the public were reasonable. The fact that the carriers charge some a less price than that charged the public is some evidence that the greater price is unreasonable or excessive, but it is not conclusive, so that the difference between the special and the general charges

can be made the measure of damages in any case, unless it is shown that the special charge is the correct and reasonable price.—*Cowden's Case*, 94 Cal. 470, 29 Pac. 873, 18 L. R. A. 221, 28 Am. St. Rep. 142; *Schofield's Case*, 54 Am. Rep. 863, note. At common law a common carrier was thus liable to an action at law for damages for failure or refusal to perform its duties to the public for a reasonable compensation, or to one to recover the money paid when the charges are excessive.— *Lough v. Outerbridge*, 143 N. Y. 271, 38 N. E. 292, 25 L. R. A. 674, 42 Am. St. Rep. 716. Without statutes regulating common carriers, they undertake generally, and not as a casual occupation, to carry and transport persons, or goods for the public, for a reasonable compensation, with or without a special agreement, and for all people indifferently, and, in the absence of a special agreement, are bound to treat all alike, in the sense that they cannot charge any one an excessive price. They could exact from no one under any circumstances more than was reasonable or just.—*Root's Case*, 114 N. Y. 300, 21 N. E. 403, 4 L. R. A. 331, 11 Am. St. Rep. 643; 2 Kents Com. (3th Ed.) 598. At common law, however, carriers could make a discount in favor of particular customers or classes for special or justifiable reasons, and upon special conditions, without violating any of their duties to the public; but, if the conditions and circumstances were equal, the charges were required to be equal. The subject, duties and liabilities of common carriers is now, both in England and in the United States, largely regulated by statute. The English Parliament, the federal Congress, and the various state Legislatures have now provided for and regulated the business of carriers within their respective domains and according to their respective powers. To these statutes we must now look, and by them be governed, in determining

the rights, duties, and liabilities of carriers and of shippers. The subject has been for a long time more or less regulated in this state by statutes—sometimes by local and special, and sometimes by general.

Discriminations and rebates by railroad common carriers have long been prohibited in this state—certainly since April 19, 1873.—Pamph. Acts 1872-73, p. 62. This act regulated the charges for transportation of freight upon railroads within this state, and among other things prohibited discriminations, and provided that the railroad company, for the transportation of local freight, might demand and receive not exceeding 50 per cent. more than the rate charged for transportation of the same freight over the whole line of its road. Stone, J., in construing this statute in the cases of *State ex rel. Harrell v. Mobile & M. Ry. Co.*, 59 Ala. 321, and *M. & M. Ry. Co. v. Steiner, et al.*, 61 Ala. 559, upheld the enactment, but pointed out hardships in its provisions, and recommended changes by the Legislature, remarking that the statute might be oppressive on the railroads, but that the remedy was not with the court

The statutes of this state on this subject have often been changed, but they have ever since remained so that discriminations and rebates in freight rates have been prohibited, except in some specified cases mentioned in the statutes. Sections 3462 and 5551 of the Code of 1896, and section 245 of the Constitution, were in force in this state at the times of the making, and the breach of the contract complained of in this case.

These provisions are as follows:

"3462 (1161). Rates on Freight to be Posted at Depot; Discrimination Unlawful.—Every person or corporation, owning or operating a railroad in this state, must publish, by posting at all the freight depots along the line of such railroad, the tariffs of rates for the

transportation of freight thereon, showing the rates for each class, and including general and special rates; and from such tariffs no reduction shall be made in favor of any person which is not also made in favor of all other persons or corporations by change in such published rates. Special rates, if so published, may be given to any person or corporation to aid in the development of any industrial enterprise in this state."

"5551 (4147). Reduction of Regular Rates by Railroads.—Any person or corporation operating a railroad, who makes, and any person who knowingly accepts, a lower transportation rate for person or freight than the published tariff, must, on conviction, be fined not less than ten, nor more than five hundred dollars."

"245 (Const. 1901). No railroad company shall give or pay any rebate, or a bonus in the nature thereof, directly or indirectly, or do any act to mislead or deceive the public as to the real rates charged or received for freights or passage; and any such payments shall be illegal and void, and these prohibitions shall be enforced by suitable penalties."

In order for plaintiff to recover in an action like this, it must show that it was compelled to pay unreasonable or excessive charges for the shipment of its freight. The fact that it paid more than it had contracted to pay is not sufficient. It must appear that it was compelled to pay more than the railroad company was authorized to charge, or collect from it, and it must appear that the excessive amount was paid involuntarily or as a condition precedent to getting its freight or having it shipped. Paying such amount after the freight was shipped and delivered merely because it was demanded by the shipper is not sufficient. It was necessary for the plaintiff in this case to show that the contract of shipment relied upon as the basis

of this action was one that was provided for by the statutory and constitutional regulations above referred to, or that the second contract under which the logs were shipped was unreasonable or was in violation of the law. The mere fact that the rates fixed by the contract were in excess of those fixed by the first contract is not sufficient; and plaintiff must show that these excessive charges were paid involuntarily, as above pointed out. Each count of the complaint as to which demurrers were sustained was (to say the best for it) indefinite and uncertain, and, as the demurrers went to these specific defects, they were properly sustained.

Construing the averments most strongly against the pleader, it does not appear that the rates fixed by the first contract were those authorized by the statute, or that they were not in violation of the statutory or constitutional provisions referred to, or that the rates charged or collected were in excess of those authorized by law. Nor does it certainly appear that the excessive charges were paid involuntarily, or under such duress or necessity as would authorize the shipper to recover the charges so paid. None of the counts show that plaintiff and defendant had any rights under the law to enter into any special contract different from that accorded other shippers, nor does it show that the charges or rates collected were different from, or in excess of, those charged other shippers. This is clearly necessary to entitle plaintiff to recover in this action. A mere contractual right alone is not sufficient to support the action. There must be shown a breach of duty, as well as of contract, to support the action. As was said by Stone, J., quoting Tindall, C. J.: "The payments must be made in order to induce the railroad company to do that which they were bound to do without them, and for the refusal to do

which an action on the case might have been maintained."—*M. & M. Ry. Co. v. Steiner et al.,* 61 Ala. 559. The statutes and constitutional provisions of this state, above set out, are very similar in effect to those of the Interstate Commerce Commission of Congress which were construed by the Supreme Court of the United States in the *Rebate Case,* 209 U. S. 56, 28 Sup. Ct. 428, 52 L. Ed. 691, wherein, in speaking of the special contracts between shipper and common carrier, the court in substance and effect said: It appears from that case that in June, 1905, the packing houses entered into contracts with the Burlington Railroad for the shipment of its products at a certain rate, but in August, 1905, the Burlington adopted a newly published rate much higher than that accorded to the packing houses in the contracts. By still giving the packers the benefit of the old rates it was charged that the packing houses were being accorded a rebate. All shippers must be treated alike under the interstate commerce laws, and Congress does not intend that the railroads and some shippers may get around the principle by secret contracts. That was the broad principle laid down by Justice Day in announcing the decision of the court. Justice Day dealt at length with the attempted defense that the contract was the legal rate at the time it was made, and that there is nothing in the law destroying the right of contract so essential to carrying on business of the packing house character, and said (pages 80-82 of 209 U. S., and page 435 of 28 Sup. St. [52 L. Ed. 681]) : "This contention loses sight of the central and controlling purpose of the law, which is to require all shippers to be treated alike, and but one rate to be charged for similar carriage of freight, and that the filed and published rate, equally known by and available to every shipper. * * * There is no provision excepting the special contracts from the operation of

the law. There is no provision for the filing of contracts with shippers and no method of making them public defined in the statute. * * * The law is not limited to giving of equal rates by indirect and uncertain methods. It has provided establishing of one rate to be filed as provided. * * * Any other construction of the statute opens the door to the possibility of the very abuses of unequal rates which it was the design of the statute to prohibit and punish. It may be urged that this construction renders impossible the making of contracts for the future delivery of such merchandise as the petitioner deals in, and that the instability of the rates introduces a factor of uncertainty, destructive of contract rights enjoyed in such property. Such considerations of inconvenience or hardship address themselves to the lawmaking branch of the government, not to the courts."

Pleas 3 and A set up the fact that plaintiff had breached the contract relied upon as the basis of its claim, and had refused to be bound by its terms, and therefore could not and should not hold the defendant to it. These facts, if true (and on demurrer they must be so taken), constituted a good defense to each of the counts to which they were interposed. A party will not be allowed, and should not be allowed, to both affirm and disaffirm the same contract at the same time. One who elects to avoid the burdens of a contract will not be allowed to reap the benefits thereof. These pleas were therefore sufficient.—16 Cyc. 785-791; *Levy v. Bloch*, 88 Ala. 290, 6 South. 833.

Pleas B, C, and E each set up, in varying language, the same defense—that is, that the contract relied upon as the basis of the action, and declared on, was invalid under the statutes and laws of this state, above referred to—that to enforce it would be to violate the law, in

that it would be a discrimination by the defendant against the public and in favor of plaintiff. If this be true (and on demurrer they must be so treated), they each presented a good defense to any count of the complaint.

Justices SIMPSON, ANDERSON, McCLELLAN, and EVANS are of the opinion that count 2 stated a good cause of action, and was not subject to the demurrer thereto.

Chief Justice DOWDELL and Justice SAYRE concur in the views of the writer that count 2 was bad, as well as the other counts as to which demurrers were sustained.

All the justices concur in holding that, if it was error to sustain a demurrer to count 2, this court cannot say from the record that it was error without injury.

It therefore follows that the judgment must be reversand the cause remanded.

Reversed and remanded.

SIMPSON, ANDERSON, McCLELLAN and EVANS, JJ., concur. DOWDELL, C. J., and MAYFIELD and SAYRE, JJ., dissent.