26 So.2d 865

**TUSKEGEE HOMES CO. v. OSWALT.**

5 Div. 411.

Supreme Court of Alabama.

June 13, 1946.

Jack Crenshaw, of Montgomery, and Wm. M. Russell, of Tuskegee, for appellant.

Wm. C. Hare, of Tuskegee, and Richard H. Cocke, of Alexander City, for appellee.

FOSTER, Justice.

This is an appeal from a decree sustaining a demurrer to a bill in equity as last amended, and dismissing the cause. The bill alleges in substance that complainant constructed a number of houses owned by it and rented to defense workers, and in doing so purchased from respondent 830,000 feet of yellow pine lumber; that respondent was engaged in the business of manufacturing and producing such lumber under authority of the War Production Board for sale to complainant for that purpose; that their agreement was that the sale price to complainant should be the maximum legal prices under applicable price regulation; that complainant was not in the lumber business and relied on respondent to calculate properly such prices for each invoice

rendered to complainant for such lumber as sold; and that complainant assumed that this had been done and paid such invoices as rendered; that respondent had sole charge of the records showing the grade of lumber and had sole knowledge of the facts necessary to determine which price regulation was applicable so as to fix the price; that there were two such regulations here material, No. 19 applicable "for direct mill sales of Southern pine lumber," and No. 215 applicable "for distribution yard sales of lumber," that No. 19 is extremely complicated and the calculation required numerous mathematical computations, based upon separate tables, one as to its species and another as to its dimensions and finish. The bill analyzes the nature of the computations showing that they were numerous and complicated. That regulation No. 19 provided for retail sales by mill producers calculated on the wholesale price as outlined, plus an addition for the retail sale. Regulation No. 215 "established maximum prices for sales by retail distribution yards," that is by those who buy from producers rather than those who produce and retail their own lumber. The price by the yard distributor was based upon the price he had to pay under regulation No. 19, plus an addition for handling charge and a percentage for profit; that complainant left the calculation of the maximum legal price entirely to respondent, and relied upon his using the proper price regulation, and was without knowledge as to the details of respondent's operations necessary to determine which price regulation was applicable, and relied upon respondent and assumed that he would use the proper price regulation; that though he was required by law to show on the invoices the grade and species of all the lumber, he did not comply with that requirement and did not show on the invoices the grade of the lumber; that without that knowledge complainant could not calculate the proper legal maximum prices; that the lumber was on some three hundred separate invoices, some including many different items; that the calculation is extremely complicated, embracing over three thousand different items, with the prices varying according to grade, size, kind, length, dimension and condition of the lumber: each such item must be separated,

considered and computed upon the appropriate price regulation plus required additions or deductions: that this account should be stated in equity by a trained master and it would be impossible for a jury to do so. That complainant has learned since paying its invoices that respondent has calculated said prices on the wrong maximum regulation in using regulation No. 215 applicable to yard distribution, while actually respondent was a mill producer and entitled only to the maximum legal price under regulation No. 19, applicable to direct mill sales, plus an amount for the retail sales. That such course of dealing amounted to a constructive fraud upon complainant by which he collected much more than was due him under the contract. That an accounting is necessary to determine the amount of such excess since the records as to the grade and condition of the lumber are exclusively in possession of respondent and not shown on the invoices.

In the alternative, that the Emergency Price Control Act of Congress as amended provided that if a seller violated the applicable price regulations he should be liable to suit for three times the amount by which the amount collected exceeded the applicable legal maximum prices at the suit of the purchaser when the sales were for use or consumption other than in the course of trade or business; and when the sales were for use and consumption in the course of trade or business, at the suit of the price administrator for the benefit of the United States; that complainant purchased the lumber as a consumer and not for resale, and he did not resell it but consumed it in building houses which he owned; that a discovery is necessary to obtain the required information, and that it requires an extremely complicated computation of some three thousand items separately, which can only be done by a trained accountant.

The bill prays for a discovery, and a reference to a trained accountant to make the legal calculations and for a decree for the overcharges; or, in the alternative, for a true and accurate accounting of all sales showing the grades and the proper maximum prices calculated under regulation No. 19, and for an order of reference to a

68

trained accountant to determine such overcharges, and for a personal judgment against respondent for treble damages plus court costs and attorneys' fees as provided by the Emergency Price Control Act, as amended or extended, 50 U.S.C.A.Appendix, § 909 et seq.

The grounds of demurrer which need be considered are that complainant has a plain and adequate remedy at law; that the bill does not show that respondent did not have a right to charge retail prices; that complainant was in pari delicto; that the allegations of fraud are insufficient and an accounting and discovery are not available under the facts alleged; and to the second aspect, an additional ground that it shows that the purchases were for use or consumption in the course of trade or business.

The decree of the court sustained the demurrer without specification or opinion, and dismissed the cause out of court.

### Discovery.

■ The equity of the bill cannot rest on the principle of discovery in aid of a common-law right of action. It does not allege or show that "essential and material facts are within the exclusive keeping of the defendant and can be proved in no other way except 'by the defendant's answer.'" Pate v. Bruner, 243 Ala. 648, 11 So. 2d 356, 358; 8 Ala.Dig., Discovery, ⊛19; Employers Ins. Co. v. Rhodes, 240 Ala. 226, 198 So. 616; Cleveland Storage Co. v. Guardian Trust Co., 222 Ala. 210, 131 So. 634.

■ But the allegations necessary to support an independent bill for discovery are not required when the discovery is sought in aid of another and primary equity. Shelton v. Timmons, 189 Ala. 289, 66 So. 9; Hale v. Cox, 233 Ala. 573, 173 So. 82; Cleveland Storage Co. v. Guardian Trust Co., supra.

### Accounting.

■ The allegations are sufficient to invoke jurisdiction for an accounting on account of the claim for overcharges as a primary equity. A case for equitable relief on that claim is made though the demand is such as to support an action at law, and though no discovery is necessary, "on facts showing a complicated nature of the account" and that the complication is so great that the remedy at law is inadequate, though the accounts to be examined are on one side only. First National Bank v. Lowery, 234 Ala. 56, 173 So. 382; Comer v. Birmingham News Co., 218 Ala. 360, 118 So. 806; Beggs v. Edison Electric Illuminating Co., 96 Ala. 295, 11 So. 381, 38 Am. St.Rep. 94; Pollak v. Claflin, 138 Ala. 644, 35 So. 645; Virginia & Ala. M. & M. Co. v. Hale, 93 Ala. 542, 9 So. 256.

The bill sufficiently alleges the necessity for an equitable accounting by a trained accountant. Comer v. Birmingham News Co., supra.

### The claim for overcharges.

■ It is provided by section 205(e) of the Act, 50 U.S.C.A.Appendix, § 925(e), in substance that for an overcharge a person who buys for use or consumption other than in the course of trade or business may bring an action against the seller on account of the overcharge, for an attorney's fee and in addition, whichever of the following sums is the greater—(1) three times the amount of the overcharge or (2) an amount not less than $25 nor more than $50 as the court may determine. But "that such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation." It is also provided that if the buyer is not entitled to bring the action, the administrator may institute such action on behalf of the United States. This has been held in two cases by the same judge in New York to mean that any action for an overcharge must be brought by the administrator if the buyer purchased for use or consumption in the course of trade or business,—Alba Trading Co. v. Constants, 181 Misc. 778, 47 N.Y.S.2d 138; Marrow Mfg. Co. v. Eightinger, 185 Misc. 900, 58 N.Y.S.2d 11,—and cannot base his claim on fraud.

But in another case by another judge in the same court—Compania Importadora

v. Caldwell, 185 Misc. 902, 58 N.Y.S.2d 745,—it was held that a buyer for use or consumption in the course of trade or business, although the statute does not so provide, may recover of defendant his actual loss by reason of the overcharge, holding that he is not barred because he paid the excess charge, though he violated the law in doing so, but did it unknowingly, leaving it an open question when he buys with knowledge that he is paying an overcharge; and that it will not be presumed that he knew that the price he paid was excessive. That opinion admits that it is inconsistent with Alba Trading Co. v. Constants, and Marrow Mfg. v. Eightinger, supra.

To the extent that complainant is seeking recovery for the amount of his overcharges, not treble damages as a penalty, the complaint is so framed as not to be controlled by the statute. It is predicated to that extent solely on the theory of a common-law right to recover for money obtained by a constructive fraud, which is available whether or not complainant purchased for use and consumption other than in the course of trade or business.

The attributes of such action have some analogy to one for overcharges for freight transported in commerce. Southern R. Co. v. Lowe, 170 Ala. 598, 54 So. 51; Fairford Lumber Co. v. Tombigbee V. R. Co., 165 Ala. 275, 51 So. 770; Mobile & M. R. Co. v. Steiner, McGehee & Co., 61 Ala. 559 (7); 10 Corpus Juris 449, section 708, page 454, section 717; 13 Corpus Juris Secundum Carriers § 323, page 773.

The common-law right to recover overcharges for freight cannot be maintained if the payment of the overcharge was made voluntarily by complainant; that is, not under duress or fraud. There is no duress insisted on. The fraud is here alleged to be of a constructive sort and we have set out the substance of the bill in that respect.

It is noted that respondent is not charged with making a willful overcharge or misrepresentation, and complainant does not allege any diligence on his part in respect to the matter. But we think the principle is controlled by the discussion of this Court

in Prestwood v. Carlton, 162 Ala. 327, 50 So. 254. In that case the plaintiff made an agreement in respect to defendant's timber land. Plaintiff agreed to get up a proper description of such land. By mistake, he included land not owned by defendant, and the written contract executed by defendant contained such description. There was a warranty, and plaintiff sued on the warranty. The defense was constructive fraud.

■ It was not alleged that plaintiff made a willful misrepresentation, or that defendant made any investigation to verify the description. In holding it to have been a constructive fraud on defendant, the court referred to the principle that one in negotiating a trade must not even innocently assert as a fact that which is untrue, if it is to any material extent an inducement to the other to enter into the contract; that honest belief does not relieve one from legal liability to make it good; that it was as much a fraud to affirm as true that which is untrue, though not known to be so as to assert what is known to be untrue. This principle is well settled in Alabama. Cartwright v. Braly, 218 Ala. 49, 117 So. 477; Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286; Fidelity & Casualty Co. v. Pittman, 244 Ala. 354, 13 So.2d 669; Manning v. Carter, 201 Ala. 218, 77 So. 744; Greil v. McLain, 197 Ala. 136 (5 and 6), 72 So. 410.

Of course the other elements of fraud must exist: that complainant relied on the misrepresentation without knowledge that it was false, though he made no effort to find out whether it was false, for he owed respondent no duty to investigate but could rely on what was so represented as being true.

■ The bill in the instant case in substance alleges that there was a misrepresentation made by respondent upon which complainant acted in paying the invoices in ignorance of its falsity. In the light of their agreement the invoices made by respondent and submitted to complainant amounted to a representation to complainant that they were computed on the correct basis, and reflected the legal maximum prices as agreed on. That the invoices on

their face did not show the error, nor the facts on which it could be ascertained.

Complainant had a right to rely on the assumption that the invoices were calculated on the correct formula, in the absence of any information to the contrary. Reliance on that as a representation is not in law negligence. Complainant is not in pari delicto; representation was not one of law but of fact. Compania Importadora v. Caldwell & Co., 185 Misc. 902, 58 N.Y.S.2d 745.

So that complainant shows a prima facie claim based upon the right of recovery of the amount of overcharges under the Price Control Administration whose payment was procured by a constructive fraud.

Our conclusion seems to be supported by the cases of Porter, Adm'r v. Warner Holding Co., 66 S.Ct. 1086, and Bowles v. Skaggs, 6 Cir., 151 F.2d 817, which have come to our attention since writing the foregoing features of this opinion. We understand them to mean that section 205 (e), supra, affords the only remedy for the recovery of damages as a penalty there provided. But that such damages (a penalty) does not exclude the power of a court to require restitution to the purchaser of the amount of the overcharges paid by him. This was a suit in equity by the administrator to enjoin violations of the regulations fixing ceiling prices, and is authorized by section 205 (a), which is to that effect. But that feature of the statute makes no provision for restitution. Yet the court held that when such remedy is sought by the administrator, the court will grant full relief and cause restitution to be made. It is said [66 S.Ct. 1091] "Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded under § 205 (e)," citing Bowles v. Skaggs, supra. Further, when the administrator seeks restitution to be made to the purchaser, "he does not request the court to award statutory damages to the purchaser, * * *. Rather he asks the court to act in the public interest by restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant. Such action is within the recognized power and within the highest tradition of a court of equity. Thus it is plainly unaffected by the provisions of § 205 (e)."

If such implied power exists in a court of equity when the right to restitution is not claimed by the purchaser, it would be logical to assume that such right to restitution at the suit of the purchaser is available "unaffected by the provisions of § 205 (e)." We think it results that restitution may be ordered in any such suit as is appropriate and available for such purpose.

### Penalty.

The bill in general terms also alleges in the alternative that the sales were made to him for use or consumption other than in the course of trade or business, and therefore that the treble damages claimed were payable if at all to complainant and not to the price administrator for the benefit of the United States. The amount of treble damages is specifically claimed in the prayer. The bill also makes further averment as we have shown as to the use of the material purchased.

The full meaning of those terms seems not to have been declared by the United States Supreme Court, but some district courts have had certain questions in respect to it, holding that a sale of machinery to a farmer to use in his farming operations is for use in the course of trade or business. Bowles v. Rock, D.C., 55 F. Supp. 865; Bowles v. Silverman, D.C., 57 F.Supp. 990. But a different conclusion was reached in Bowles v. Madl, D.C., 60 F. Supp. 152.

Likewise crushed stone sold to a railroad for use in maintaining its roadbed. Bowles v. Seminole R. & S. Co., 5 Cir., 145 F.2d 482.

And that the "course of trade or business" is not confined to purchases for resale at a profit but includes purchases by industrial and commercial consumers also, as by one who purchases a tractor to use in his business of hauling. Lightbody v. Russell, 293 N.Y. 492, 58 N.E.2d 508.

No case has been cited to us involving a purchase of building material to be used in constructing houses to be "rented to and occupied by defense workers," as alleged in the bill. The amount was over

800,000 feet. It was not for a house for use by the purchaser. The federal courts may hold that the use of the lumber by complainant as described in the bill was in "the course of trade or business," so as to hold that complainant is not entitled to the penalty. Such a holding would be binding on state courts. We will not undertake to apply it to the situation here in hand until the federal courts shall do so, unless it is necessary to determine justiciable rights directly involved. We think it is not necessary to pass on that question on this appeal, but that another principle is controlling.

Will Equity Enforce a Statutory Penalty?

It is also insisted by appellee that being a penalty a court of equity will not enforce it, citing Kurzman v. Commercial Credit Co., D.C., 33 F.2d 358; Commercial Credit Co. v. Semon, D.C., 33 F.2d 356. Those were penalties relating to a charge of usury, and complainant was simply required to do equity.

Likewise in Alabama prior to the Act of March 4, 1901 (General Acts 1901, p. 164), the doctrine based on the principle that a complainant in equity must do equity, was so applied that he could not by complaining to a court of equity obtain advantage of the penalty for usury under the statute except upon his offer to do equity by paying the lawful rate of interest. We have many such cases prior to that statute so holding extending back to Branch Bank v. Strother, 15 Ala. 51; Rogers v. Torbut, 58 Ala, 523; First National Bank v. Clark, 161 Ala. 497, 49 So. 807; 66 Corpus Juris 272, § 246.

It is true that equity will not ordinarily assume jurisdiction to enforce penalties. Jarrett v. Hagedorn, 237 Ala. 66, 185 So. 401; Montana v. Alabama Fishermen's & Hunters' Ass'n, 226 Ala. 303, 146 So. 805; 21 Corpus Juris 104, section 81.

But it will do so if it is a penalty provided by statute, and the court has jurisdiction on other grounds (30 Corpus Juris Secundum Equity, § 57, page 399, notes 10 and 11; 21 Corpus Juris 99, section 74), though of course it is conditioned on complainant doing equity when appropriate, and not otherwise prohibited by law. Courts of equity have no power to set aside statutes granting rights or refusing in proper cases to enforce such rights, "in contravention of the direct expression of legislative will." The State v. McBride, 76 Ala. 51, 60; Chandler v. Crawford, 7 Ala. 506; Clark v. Barnard, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780; 2 Story Eq.Jur. section 1136; State v. Marshall, 100 Miss. 626, 56 So. 792, Ann.Cas.1914A, 434; Keystone Lumber Co. v. Yazoo, 96 Miss. 116, 50 So. 445, Ann.Cas.1912A, 801; State v. Hall, 70 Miss. 678, 13 So. 39.

Discovery in Aid of a Penalty.

It is a settled doctrine that a court of equity will not compel a person to disclose facts that will subject him to a penalty or forfeiture. 66 Corpus Juris 271, section 245; Sloss-Sheffield S. & I. Co. v. Maryland Casualty Co., 167 Ala. 557, 52 So. 751.

That feature of the bill which seeks to recover the penalty is an aspect set up in the alternative, and must stand on its merits. A discovery and accounting cannot be had to aid in the establishment of the claim to a penalty. They are sought in respect to both aspects. While they may be had in aid of the first, if that is not available they cannot be used as an aid to equity jurisdiction for the recovery of the penalty. However complicated may be the transaction, a suit at law is the only appropriate remedy to recover a penalty (Jarrett v. Hagedorn, supra), unless equity has jurisdiction on some other principle than for an accounting and discovery.

There is no principle here shown to support the equity of the bill insofar as it seeks to recover the penalty.

We doubt, but do not decide, whether complainant is one so situated as to be entitled to the penalty. But if so his remedy is at law.

It follows that in our opinion the demurrer to that aspect of the bill which seeks a recovery of the amount of overcharges claimed and for an accounting and discovery for that purpose should not have been sustained, and therefore that the bill should not have been dismissed; but that the de-

murrer to that aspect which seeks a recovery of the penalty was properly sustained.

A decree will be here rendered accordingly.

Reversed in part, affirmed in part, and remanded.

GARDNER, C. J., and LAWSON and STAKELY, JJ., concur.