STATE OF MISSISSIPPI AND WARREN COUNTY *v.* MARION MARSHALL.

[56 South. 792.]

1. CRIMINAL PROSECUTION. *Jurisdiction of chancery court. Intoxicating liquors. Abatement and injunction. Relief. Constitution 1890, sections 126, 131, 159. Laws of 1910, chapter 134.*

    The chancery court cannot inflict any punishment under the criminal laws of the state.

2. BILL IN CHANCERY. *Relief. Prayer of bill.*

    If a bill in chancery states a good cause of action it is not made bad because the party filing the same seeks greater relief than is allowable. He is entitled to have all the relief to which he shows a right, and which is in whole or in part appropriate to the prayer of the bill.

3. INJUNCTION. *Unsworn bill. Code of 1906, section 608.*

    The issuance of an injunction upon an unsworn bill, is expressly authorized by section 608, Code of 1906.

4. Chancery Courts. *Acts of 1910, chapter 134.. Constitution 1890, section 159.*

Chapter 134, page 124, of the acts of 1910, which provides that any person selling or giving away intoxicating liquors in violation of law shall be subject to certain penalties, and further declaring that such sales constitute a nuisance and conferring on chancery courts concurrent jurisdiction to entertain suits for the penalties and to suppress the nuisance and restrain such violators; does not confer on chancery courts any jurisdiction to entertain criminal prosecutions and is not in conflict with the Constitution 1890, section 159, which provides that the chancery court shall ‑have full jurisdiction in all matters of equity.

5. Same.

When the statute says that the chancery court shall, by proper judgments and orders, punish and restrain the violators thereof, it simply gave that court full power to abate the nuisance by injunction and to punish any person restrained by order of the court, if such person should thereafter disobey the court's ·order.

6. Same.

Because a person may be prosecuted criminally for maintaining a public nuisance, the fact cannot prevent the right of an equity court to enjoin, and particularly when the law expressly gives that right.

7. Chancery Court. *Abatement and injunction. Constitution 1890, section 159.*

Under Constitution 1890, section 159, which declares that the chancery court shall have full jurisdiction in all matters of equity, whatever is a matter of equity the court's power to adjudge is full, and when the court takes jurisdiction of a subject it ought to dispose of it fully and finally, the word "full" implying that nothing is reserved. The provision is broadly declaratory of the rule, that where equity has jurisdiction for one purpose, it acquires jurisdiction for all purposes.

8. Same.

A court of chancery having statutory jurisdiction under the laws of 1910, chapter 134, to abate a liquor nuisance, may not only abate the nuisance, but may also render judgment for the statutory penalty.

9. CHANCERY COURTS. *Enforcement of penalties.*

Courts of equity cannot refuse to enforce penalties created by statute. The rule that courts of equity will refuse to enforce a penalty, has no application to any but penalties imposed by private contract.

10. LAWS OF 1910, CHAPTER 134. *Fourteenth Amendment to United States Constitution. Constitution* 1890, *section* 14.

Laws of 1910, chapter 134, providing that when a party shall violate its provisions, in addition to having his place of business suppressed as a nuisance, he shall be liable to pay a penalty recoverable by attachment and giving the chancery court concurrent jurisdiction to entertain the suit, does not make the proceeding a criminal one, and as full opportunity is given the defendant for a hearing, it is not violative of the Fourteenth Amendment of the Federal Constitution nor of section 14 of the Constitution of 1890.

11. STATUTES. *Penalties. Civil cause. Laws of* 1910, *chapter* 134.

Every conceivable cause of action, whether legal or equitable, except such as are "criminal" in the usual sense, that is, where the judgment against the defendant may be a fine or imprisonment or both, is a "civil cause," and within this definition a suit in chancery to recover the penalties provided by Laws of 1910, chapter 134, for the illegal sale of liquor, is a "civil cause."

12. TRIAL BY JURY. *Laws of* 1910, *chapter* 134.

Laws of 1910, chapter 134, which imposes a penalty for the illegal sale of liquor, and gives the chancery court concurrent jurisdiction to recover same is not violative of the Constitution of 1890, sections 26-31, providing for trial by jury. Since a jury trial is no more a matter of right in such cases than in any other chancery case, and if in the judgment of the chancellor a jury trial is needed he has power under section 558, Code of 1906, to award it.

13. SECTION 23, CONSTITUTION 1890. *Search or seizure. Laws* 1910, *Chapter* 134.

Constitution 1890, section 23, providing "that the people shall be secure in their persons, houses and possession, from unreasonable search, etc., is not violated by Laws of 1910, chapter 134, giving the state or county a suit for the penalty provided therein, which may be begun by attachment, since there is no search or seizure within the meaning of said section; the statute

merely affording a remedy by attachment for the collection of the penalty.

14. LAWS OF 1910, CHAPTER 134.  *Attachment.*

   The state or county has a right of attachment to recover the penalty for violations of Laws of 1910, chapter 134.

15. INTOXICATING LIQUORS.  *Abatement and injunction.  Affidavit.*

   No affidavit is·necessary for an attachment by the state to recover the penalties imposed by Laws of 1910, chapter 134, for the illegal sale of liquors.

, APPEAL from the chancery court of Warren county. HON. E. N. THOMAS, Chancellor.

Suit by the state, on the relation of the attorney-general against Marion Marshall, with an attachment and seizure of intoxicating liquors in defendant's place of business, seeking to have defendant's illegal sale of liquor suppressed as a nuisance, and for an injunction against the further conduct of the business and for a decree for penalties. On demurrer the attachment was dismissed and the property levied on released and the temporary injunction was modified. Both the state and the defendant appeal.

*Carl Fox,* assistant attorney-general, for appellant.

The second section of chapter 134 of the Laws of 1910 provides that "The chancery court shall have authority to suppress as a nuisance any place of business where the preceding section is violated, and by proper judgments and orders, punish and restrain the violaters thereof." As this record stands, it is a fact that defendant did violate and was continuously violating section one of said act, and that his business was that of unlawful retailing vinous and spirituous liquors. The writ of injunction as first granted, therefore, was the only proper writ under this law. It was the "place of business" which the act gave the chancery court "authority to suppress as a nuisance." On this direct

appeal the constitutionality and validity of that act is not in question; that will be questioned, or rather is questioned on cross-appeal by the defendant. Nevertheless, I shall go briefly into the merits of the whole case.

This act is constitutional.

In 23 Cyc., page 88, it is said: "Statutes declaring that all buildings, tenements, or other places ued for the illegal sale or keeping of intoxicating liquors shall be deemed common nuisances and treated as such, or abated by due proceedings, are valid and constitutional." And see the cases cited in note 21 in support of the taxes. See, especially, *Mugler* v. *Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, and *Schmidt* v. *Cobb*, 119 U. S. 286, 7 Sup. Ct. 1373, 301 L. Ed. 321.

The law in question provides a civil and not a criminal remedy, and this proceeding is a civil proceeding. The same question, involving precisely the same principle, was decided by this court in the case of the *Grenada Lumber Company et al.* v. *The State,* on January 23d of this year, 54 So. Rep. 8. In that case, after citing many authorities, this court speaking through Judge Anderson, said:

"The term 'civil cause' (as used in section 147 of the Constitution), in our judgment was intended to comprehend every conceivable cause of action, whether legal or equitable, except such as are criminal in the usual sense; that is, where the judgment against the defendant may be a fine or imprisonment, or both, and in case of fine alone, imprisonment until payment. This is in fact a suit to punish an offense against the public justice, but it is a civil cause nevertheless; and it is competent for the legislature to provide for the punishment of such offenses by either criminal or civil proceedings, or both, as is done by chapter 145 of the Code."

The bill itself was not sworn to but the chancellor necessarily had to be satisfied that the allegations of the bill were true, under section 608 of the Code of 1906. which is as follows:

"An injunction shall not be granted unless the judge or chancellor shall be satisfied of the complainant's equity and of the truth of the allegations of the bill by oath or other means."

I presume it will be argued that the act is unconstitutional because it grants to the chancery court jurisdiction to enforce a penalty. If there were no other grounds or cognizances of this suit by the chancery court than the enforcement of the penalty, then the argument might have some weight, although even in that case, since the chancery court has exercised jurisdiction of this case, we do not think the argument would be sound. But since the chancery court clearly has jurisdiction for the purpose of restraining and abating the nuisance, under the long practice in England and in this country and under the statute itself, and has taken cognizance of the suit for that purpose, then it will retain the case for all purposes and grant all of the relief germane to the subject-matter of the issue involved.

*R. L. C. Barrett,* for appellee and cross-appellant.

Chapter 134, of the acts of 1910, is unconstitutional. By conferring jurisdiction on the chancery court to try the matters relating to the attachment and penalty prescribed, it violates section 31 of the Constitution of the state of Mississippi which provides that "The right of trial by jury shall remain inviolate." Certainly at common law a jury trial as to such matters was necessary, and it is equally certain that this section of the Constitution was intended to guarantee a trial by jury in all matters where at common law such a trial was necessary. *Isom* v. *Mississippi Railroad Co.,* 36 Miss. 300.

Therefore, the only question left to decide on this point is whether or not the defendant in this case would, under Code section 558, be able to demand as a matter of right a trial by jury in the chancery court. This is

disposed of by *First State Bank* v. *Lincoln,* 53 South. 387, in which this court recently held that the matter of allowing a jury in a chancery proceeding was purely discretionary with the chancellor, there being no right to a trial by jury in chancery cases. Under these decisions it is manifest that the act in question is unconstitutional and for this reason the injunction should have been dissolved and the demurrer sustained.

The Constitution of Mississippi defines the jurisdiction of the chancery court and the grant of powers should be construed to deny those not specifically conferred. At the time of the adoption of the present Constitution the chancery court had no power to enjoin or suppress as a nuisance a place where liquor was illegally sold, for no statute gave that authority and no such power was given by the common law. At common law a court of equity had no jurisdiction to enjoin a place at which liquors were sold illegally, for the simple reason that up to the time the common law became a defined system there was, in England, no such thing as the illegal sale of liquor in the sense in which we have it in the United States. This is an historical fact of which the court will take judicial cognizance. Local option laws and prohibition laws are of modern growth and are as distinct from the common law as are laws relating to automobiles and flying machines. It is true that at common law tippling houses were occasionally enjoyed as nuisances but it was always on the ground that they had become disorderly, and it was always required that the facts constituting the nuisance should be set out in the bill of complaint, and that there should be an allegation of injury to person or property rights. The tippling house itself was not a nuisance *per se.* In this connection it should be remembered that in the case at bar there is no allegation of any facts making defendant's place of business a nuisance and there is no allegation to the effect that there has been injury to persons or to property rights.

The books are full of cases holding that at common law the chancery court has no jurisdiction to suppress a criminal nuisance. For an interesting discussion of this matter the court is referred to *State* v. *Ehrlick,* 23 L. R. A. 691, 65 W. Va. 700.

The seizure of defendant's possessions and the search of his house was unwarranted and invalid and the action of the chancellor in dismissing the attachment was proper.

Section 23 of the Constitution of the state of Mississippi provides: "The people shall be secure in their persons, houses and possessions from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."

An attachment not based on affidavit is invalid under chapter 9 of the Code of 1906.

Section 129 of the Code of 1906 provides: "In what cases a remedy.—The remedy by attachment shall apply to all actions or demands founded upon any indebtedness, or for the recovery of damages for breach of any contract, express or implied, and to actions founded on any penal statute."

Section 133, of the same chapter, provides for an affidavit in such cases.

*Henry & Canizaro,* for appellee and cross-appellant.

Our contention is that the entire act is unconstitutional and void for the following reasons:

First, Because the legislature cannot alter or change the prescribed jurisdiction of chancery court as given and fixed by section 159 *et seq.* of the Constitution of the state of Mississippi.

Second. Because the act is violative of article 14, of the amendment of the Constitution of the United States, and also sections 14, 23, 26, and 31 of the Constitution of Mississippi.

Third. That appellant's bill and contention cannot be maintained if either section of the act is unconstitutional, they being absolutely dependent on each other and must, therefore, stand or fall together.

Fourth. That the demurrer and motion interposed by appellee should have been sustained by the chancellor in entirety instead of in part.

Fifth. That the chancery court will not be permitted to take jurisdiction of a cause over the objection of the defendant (appellee) when the question is properly raised in the chancery court, and that this court will not affirm its action in so doing when it appears that the defendant (appellee) by proper pleading resisted an illegal and unconstitutional practice in that said chancery court recognized an unsworn bill which presented neither a case of equity nor a case over which it had jurisdiction at common law. *State* v. *Henry*, 87 Miss. 125; Sections 159, 160 and 161 of the Constitution; *Railroad Commission* v. *The Railroad Company*, 78 Miss. page 750. Article 14 of the amendment of the Constitution of the United States, as well as sections 14, 23, 26 and 31 of the Constitution of the state of Mississippi; 35 Cyc. 1216; *Fisher* v. *McGire*, 1 Gray (Mass.) 1, 61 Am. Dec. (C) 322, section 14; Article 14 of the Declaration of Rights; *Carlisle* v. *Gunn*, 68 Miss. 234; *Wood* v. *Bailey*, 77 Miss. 815; 3 Words and Phrases, page 2231; *Risser* v. *Hoyt*, 18 N. W. 611, 53 Mich. 185; *Pennoyer* v. *Neff*, 95 U. S. 714, 733, 24 Law Ed. 566; *Light* v. *Canadian County Bank*, 37 Pac. 1075, 2 Okla. 543; *Brown* v. *Levee Commissioners*, 50 Miss. 468, 478; *First State Bank* v. *Lincoln*, 53 So. 378; *McBride* v. *State*, 70 Miss. 716; *Isom* v. *Miss. Central Railroad Co.*, 36 Miss. 300; *City of Bessimer* v. *Eidge* (Ala.), 50 So. Rep. 270; *State* v. *Fulk*, 208 Mo. 26, 105 S. W. 733, 15 L. R. A. (N. S.) 430; *State* v. *Davis*, 130 Ala. 148, 89 Am. St. Rep. 23, 30 So. 344; *Fant* v. *Gibbs*, 54 Miss. 396; Cooley on Constitutional Limitation (7 Ed.), page 246; *Bonnett* v. *Vil*

*lier,* 17 L. R. A. (N. S.), page 486; *Huber* v. *Martin,* 3
L. R. A. (N. S.), page 653; *Wortham* v. *State,* 59 Miss.
179.

MAYES, C. J., delivered the opinion of the court.

By an act of the legislature of 1910 it was provided:
"That any person who shall sell or give away any
vinous or spirituous liquors unlawfully, or who shall
allow the same to be sold or given away at his place of
business, for any purpose whatever, shall be subject to
pay to the state, county, city, town or village, where the
offense is committed, each, the sum of five hundred dol-
lars; and the state, county, city, town or village, or any
taxpayer of the state, county, city, town or village in
the name thereof, of the state revenue agent, or any
sheriff within the county acting for them, may sue for
and recover civilly, either jointly or separately, each,
said sum of five hundred dollars; and such civil suit may
be commenced by attachment without bond.

"Sec. 2.  The chancery court shall have concurrent
jurisdiction with courts of law to entertain suits under
the preceding section for the enforcement thereof in-
stituted by the state, county, or any city, town, or vil-
lage, or by any taxpayer thereof, in the name of the
state, county, city, town or village, or by the state reve-
nue agent, or by any sheriff within his county acting
for them, and the chancery court shall have authority
to suppress as a nuisance any place of business where
the preceding section is violated, and by proper judg-
ments and orders, punish and restrain the violators
thereof."   See Laws 1910, p. 124, c. 134.

The first of the above sections is not new to the stat-
utes of this state.   It is practically the same as was
section 1744, Code 1906 (section 1590, Code 1892).   The
difference between the Code sections and section 1 of
the legislative act of 1910 consists only in the fact that
the act of 1910 gives persons the right to sue for the

penalties not authorized so to do under the Code sections. The first section of the act of 1910 has been the subject of litigation in this court before, and has been construed by the court several times. We may call attention to the cases later on. The second section of the act of 1910 is an entirely new one.

Some time in December, 1910, the state of Mississippi, on relation of the attorney general, commenced a suit against Marion Marshall, alleging that Marshall had violated the act, and seeking to recover the penalty prescribed for its violation. The suit was instituted in the chancery court, and the bill charged that Marshall was conducting a place of business in the city of Vicksburg known as a "soft drink establishment." It further alleges that, while the maximum privilege license imposed by the city for the privilege of selling soft drinks is two dollars and fifty cents, yet it has collected from Marion Marshall the sum of three hundred and fifty dollars, and, acting under this so-called privilege license, Marion Marshall is conducting a pretended "soft drink" place, fully equipped as a bar, and with all the fixtures and paraphernalia of a regular saloon; that Marion Marshall has provided himself in this place with a United States government revenue license which authorizes him to sell vinous and spirituous liquors. The bill further charges that, while Marshall pretends to be conducting a "soft drink" place, it is only for the purpose of giving some name to his business; his real business being the unlawful retailing of vinous and spirituous liquors. It is further charged that on the 2d day of November, 1910, and at numerous other times before and after, Marshall sold, and permitted to be given away at his place of business, vinous and spirituous liquors contrary to law, and that he continues daily to sell same as his regular business. It is then alleged that, on account of these violations of the liquor laws, Marshall became liable to pay both to the state of Miss-

issippi and Warren county the sum of five hundred dollars for each unlawful sale or gift so made. It is further charged that because of the business in which Marshall is engaged—that is to say, the selling of vinous and spirituous liquors in violation of law—his place of business should be suppressed as a nuisance, and defendant punished for the unlawful selling of these liquors. The complaint concludes with a prayer for summons and for an attachment of the goods and chattels of defendant, especially the fixtures and liquors in the place, and prays that same be seized and dealt with according to law. The complaint further seeks the issuance of an injunction restraining Marshall from further conducting the business, and asks for a decree against Marshall for the sum of five hundred dollars for each offense that it shall be shown he committed. The bill further prays that the court inflict such punishment on the defendant as is provided by the criminal laws of the state for the illegal sale of vinous and spirituous liquors.

We may pause in the statement of this case at this point to say that, of course, the chancery court cannot inflict any punishment under the criminal laws of the state. The Constitution of the state forbids this, and the law under which this proceeding is instituted does not attempt to confer on the chancery court any such power. But, if the bill of complaint has stated a good cause of action, it is not made bad because the party filing same seeks greater relief than is allowable. He is still entitled to have all the relief to which he shows a right, and which is in whole or in part appropriate to the prayer. We may therefore ignore this last feature of the prayer.

The bill of complaint was not supported by affidavit of any kind, but a temporary injunction was granted thereon, and an attachment issued, and levied on the goods of Marshall. The issuance of an injunction upon

an unsworn bill is expressly authorized by section 608 of the Code of 1906. See, also, *Purvis* v. *Woodward,* 78 Miss. 922, 29 South. 917. As to the right of the state to attach when no affidavit is made, we shall have more to say later on.

The bill of complaint was demurred to on many grounds, but we shall not set out each ground relied on, since many are mere duplicates, and other grounds assigned are not pressed on this appeal; but, if they were, they would not be worthy of any fuller discussion than we shall give them in this opinion. On the hearing the trial court sustained the demurrer to the extent of dismissing the attachment, and releasing all property levied on thereunder. The temporary injunction was modified so as only to prohibit Marshall from conducting his business in so far as it consisted in selling or giving away vinous or spirituous liquors in violation of law. Leave of the court having first been obtained, the state prosecutes a direct appeal and Marshall a cross-appeal for the purpose of settling the principles of the case.

In the discussion of this case, we shall confine ourselves to such of the objections as are urged by counsel for cross-appellant as is necessitated by the view that we take of this case. Little need be said as to the direct appeal prosecuted by the state, since the state's contention under our view is correct. All the questions in this case needing discussion arise under the first two assignments of error found in cross-appellant's brief in so far as their contentions are concerned. Those two assignments of error are: First. That the act is unconstitutional because it is beyond the power of the legislature to alter or change the jurisdiction of the chancery court as fixed by section 159 *et seq.* of the Constitution of 1890 of the state. Second. It is claimed that the act of 1910 violates the due process clause of the Constitution of the state and the United States, the

sections being 14 of the state Constitution and the four-
teenth amendment to the Constitution of the United
States; that the act violates section 23 of the Consti-
tution of the state, providing that the people shall be
secure from unreasonable seizure or search; that it vio-
lates sections 26 and 31 of the Constitution of the state,
providing for jury trials.  Our view of this case makes
it unnecessary to notice the third, fourth, and fifth er-
rors assigned, but we will briefly state what they are.
The third assignment of error contends that the whole
law is inseparable, and, the last section being uncon-
stitutional, the whole act falls.  The fourth assignment
is a contention that the demurrer should have been
sustained in its entirety and the bill dismissed.  The
fifth contention is that as objection was interposed to
the jurisdiction of the chancery court in the beginning
of the case, and since the chancery court had no juris-
diction, the sustaining of the jurisdiction by the chan-
cellor could not vest that court with jurisdiction under
section 147 of the Constitution, which provides that the
supreme court shall not reverse in a civil cause on the
ground of a want of jurisdiction to render the judgment
or decree.  The last three subjects require no further
discussion than is incidentally given in the discussion
of the main questions involved.  The chief jurisdiction
of the chancery court is fixed by section 159 of the Con-
stitution.  If the chancery court has jurisdiction of this
cause, it acquires it under the above section.  It is there
provided that the chancery court shall have full juris-
diction in all matters of equity.  Is there any subject
of equitable jurisdiction in this controversy?

Chapter 134, p. 124, acts 1910, not only provides that
any person selling or giving away intoxicating liquors in
violation of law shall be subject to certain penalties, but
it further declares that such sales shall constitute a nui-
sance.  After declaring such sales to be a nuisance, the
act confers on the chancery court concurrent jurisdiction

to entertain suits for the penalties and to suppress the nuisance. It also provides that the chancery court may, by proper orders and judgments, punish and restrain the violators. This latter clause of the statute does not confer on the chancery court any jurisdiction to enter tain criminal prosecutions. The act under which this suit is brought is not a criminal statute, and does not authorize criminal prosecutions. Criminal proceedings are confided to other statutes and to other courts. The whole of the statute is addressed to the abatement of the nuisance declared by the statute and the recovery of the penalties provided for its violation. When the statute says that the chancery court shall, by proper judgments and orders, punish and restrain the violators thereof, it simply gave that court full power to abate the nuisance by injunction and to punish any person restrained by order of the court if such person should thereafter disobey the court's order. The statute simply gave the chancery court plenary power to accomplish the purposes the legislature had in view when it gave the court jurisdiction of the subject-matter.

The right to enjoin a public nuisance is no new subject of equitable jurisdiction. 4 Pomeroy, section 1349. By the act the unlawful sale or gift of intoxicating liquors is declared to be such, and it was clearly within the constitutional power of the legislature to so declare. Because a person may be prosecuted criminally for maintaining or conducting a public nuisance, this fact cannot prevent the right of an equity court to enjoin, and particularly when the law expressly gives that right. Statutes of the character under review are not new within this or other states. They are of the same character of statutes as are those which confer upon courts of equity the power to enjoin the keeping of a bawdyhouse, keeping a gambling house, or gambling devices. The selling or giving away intoxicating liquors in violation of law is a similar nuisance. If one of these evils

may be declared to be a public nuisance by an act of the legislature, then all may. When a business is a public nuisance, no matter how it gets to be such, whether inherently so or made so by law, the court of chancery has power to enjoin. In the state of Texas, by express statute, the chancery court is given power to enjoin gambling houses. Acts Tex. 1905, c. 153, p. 372; *Ex parte R. J. Allison,* 99 Tex. 455, 90 S. W. 870, 2 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 653. In the case of *State ex rel.* v. *Crawford,* 28 Kan. 726, 42 Am. Rep. 182, it is shown that a Kansas act of the legislature declared the selling of intoxicating liquors in violation of law a nuisance. The court refused an injunction in the above case, not because the legislature had no power to declare that the unlawful sale of intoxicating liquors was a nuisance, but because the statute so declaring had provided a different remedy for the abatement of the nuisance. In the case of *Lang* v. *Merwin,* 99 Me. 486, 59 Atl. 1021, 105 Am. St. Rep. 293, the court enjoined a nickel in the slot machine as a violation of the gambling laws and a public nuisance. In the case of *State* v. *Murphy,* 71 Vt. 127, 41 Atl. 1037, the Constitution of Vermont authorized the legislature to create a court of chancery with the powers usually exercised by that court, and it was held that the legislature had the power to declare that certain places where intoxicating liquors were sold, furnished, or given away constituted a public nuisance, and to empower the chancery court to enjoin same. This same case held that no right any violator of the law had to a trial by jury was invaded by this law. See, also, *Columbian Athletic Club* v. *State,* 143 Ind. 98, 40 N. E. 914, 28 L. R. A. 727, 52 Am. St. Rep. 407; *Ex parte Roper* (Tex. Cr. App.), 134 S. W. 334. In Story on Equity Jurisprudence, sections 921, 923, it is stated that: "In regard to public nuisances, the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth.

. . . In cases of public nuisances, . . . an indictment lies to abate them, and to punish the offenders. But an information also lies in equity to redress the grievance by way of injunction." We have no doubt as to the constitutional power of the legislature to pass this act, and confer concurrent jurisdiction on the chancery court to abate the nuisance by injunction.

Since the chancery court undoubtedly has jurisdiction for one purpose, under well-settled rules of equity jurisprudence, it necessarily follows under equally well-settled principles of equity that, when the court of equity assumes jurisdiction for one purpose, it acquires it for all. It may not only abate the nuisance, but it may also render judgment for the statutory penalties. 1 Pomeroy, section 237. Section 159 of the Constitution is broadly declaratory of the rule above stated. The section declares that the chancery court "shall have full jurisdiction" in all matters of equity. In interpreting the meaning of this section of the Constitution, this court said in the case of *Bank* v. *Duncan,* 52 Miss. 740, that "the word 'full'—'full jurisdiction'—implies that nothing is reserved. Whatever is a matter of equity as to that the power to adjudge is full. . . . It indicates that, where the court takes hold of a subject, it ought to dispose of it fully and finally. That suggests an appropriate field for legislation, within constitutional limits. If the subject of litigation be a 'matter of equity,' why should not the legislature give to the court cognizance over all incidental and dependent matters, so as to give to the respective litigants the full benefit of their rights, and enable the court to pronounce finally?" See, also, *Georgia Pacific Ry. Co.* v. *Brooks,* 66 Miss. 583, 6 South. 467; *Brunini* v. *Pera,* 54 Miss. 649; *Buie* v. *Pollock,* 55 Miss. 309. In the case of *Brunini* v. *Pera, supra,* this court in reviewing the case of *Bank* v. *Duncan,* 52 Miss. said: "The spirit of those decisions is that there is nothing in the Constitution which prohibits the legisla-

ture from granting to the chancery court the power fully
to dispose of the subject-matter of any litigation which
may arise under any of the recognized heads of its juris-
diction, without being compelled for any purpose to call
in the aid of any other tribunal.'' When the jurisdiction
of the chancery court attached for the purpose of abat-
ing the nuisance declared by the law, it attached for the
purpose of enforcing and collecting the statutory penal-
ties as well as abating the nuisance.

But it is contended that courts of equity will refuse to
enforce penalties. But courts of equity do not, and can-
not, refuse to enforce penalties created by statute. The
oft-quoted maxim that a court of equity will refuse to
enforce a penalty has no application to any but penal-
ties imposed by private contract. In the case of _State
v. Hall,_ 70 Miss. 678, 13 South. 39, this court held that
the equity court would in proper cases enforce statutory
penalties. In that case the court said: ''Equally unten-
able is the position assumed by counsel for appellees,
that equity will refuse its aid in the enforcement of pen-
alties. The unsoundness of this view lies in the failure
to mark the distinction between the statutory penalties
and penalties created by contract between private per-
sons. The latter courts of equity refuse to enforce, but
the former, the expression of the will of the lawmaking
power, the courts of equity will not undertake to disre-
gard and nullify by refusing their aid in proper cases.
1 Pom. Eq. Juris., section 458; Story, Eq. Juris., section
1326; _State v. McBride,_ 76 Ala. 51; _Clark v. Barnard,_
108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780. Having
acquired jurisdiction, the court below should have given
full relief by following the law and enforcing the penalty.
Legal remedies are constantly being worked out in courts
of equity in causes where jurisdiction is acquired on
some recognized ground of equitable interference.'' The
same principle is declared in the case of _Lumber Yard_ v.
_Railroad Co.,_ 96 Miss. 116, 50 South. 445. But it is con

tended that the collection of these penalties is a criminal and not a civil, proceeding. We think we have already set at rest this contention.

The statute authorizes no fine or imprisonment. It merely provides that when a person shall violate its provisions, in addition to having his place of business suppressed as a nuisance, he shall be liable to pay to the state, county, etc., a penalty, recoverable in a suit for same, and giving the state, county, etc., the right of attachment. The fact that the suit may be commenced by attachment and seizure does not make of the proceeding a criminal one. Many civil suits are commenced in that way. The state is without limit as to its right to provide the procedure by which its own, or any other, debt may be collected, no matter how that debt may be incurred. The only limit on its authority is only that such procedure shall be adopted as will not take property without due process of law. The procedure authorized by this statute gives full opportunity for a hearing, and does not violate the due process clause of the Constitution of the state or United States.

In the case of *Grenada Lumber Co.* v. *State,* 54 South. 8, in an admirable opinion delivered by Judge Anderson, this court held that the term "civil" comprehended "every conceivable cause of action, whether legal or equitable, except such as are 'criminal' in the usual sense; that is, where the judgment against the defendant may be a fine or imprisonment or both, and, in case of fine alone, imprisonment until payment." The court further held in the same case that, although a suit was in fact a suit to punish an offense against the public justice, yet "it is a 'civil cause' nevertheless; and it is competent for the legislature to provide for the punishment of such offenses by either criminal or civil proceedings, or both." The act which the court was construing in the above case was the anti-trust laws of the state, which law imposed penalties on the violators thereof of not less than

two hundred dollars and not more than five thousand dollars a day. See section 5004, Code 1906. Jurisdiction having been conferred on the chancery court to entertain suits for the recovery of the penalties (See Laws 1908, p. 211), the point was made in that case that the chancery court could not entertain jurisdiction, but this court held that it could. In principle the *Grenada Lumber Co. case,* in 54 South., cannot be differentiated from this case as to the right of the chancery court to entertain jurisdiction. If we should hold that the chancery court did not have jurisdiction to recover the penalties provided by acts 1910, c. 134, it would necessarily result in overruling all of the above maturely considered cases. We had no doubt of the correctness of those decisions at that time, and we have none now. The very origin of equity courts grew out of the inefficiency of the common-law courts to administer full and complete relief in all cases. The common-law courts proved themselves incapable of suppressing the liquor nuisance by the ordinary trial and conviction of the persons engaged in same. The legislature of the state has been compelled to enlarge the scope of the remedy for the eradication of the evil, and to provide other and different ways of suppressing it. In order to do this, it condemned it as a nuisance, and provided for its abatement by the chancery court as well as providing civil penalties and criminal prosecutions. In short, the legislature has called into play the full judicial power of the state in order to make its prohibitory laws effective, but it has done it in a way that is consistent with its constitutional power. The legislature has been as resourceful in providing the machinery of law wherewith to make effective its prohibition laws as the violators of the law have been in devising schemes for its destruction.

But it is contended that the right of trial by jury is not granted by this act, but is denied if it be held that the chancery court has jurisdiction in this cause. This con-

tention is utterly without merit. The court has juris-
diction, and the trial must be conducted by the rules of
procedure that prevail in a chancery court. A jury trial
is no more a matter of right in this than in any other
chancery case. If, in the judgment of the chancellor, a
jury trial is needed, he has power under section 558,
Code 1906, to award it. *First State Bank* v. *Lincoln,* 53
South. 387.

It is further argued that the act ·violates section 23
of the Constitution of the state. That section provides
that "the people shall be secure in their persons, houses,
and possessions, from· unreasonable seizure or search;
and no warrant shall be issued without probable cause,
supported by oath or affirmation, specially designating
the place to be searched and the person or thing to be
seized." No question in this case involves section 23 of
the Constitution. There is no search or seizure within
the meaning of the above section. There is a seizure,
it is true, but it is a seizure of property under a civil
attachment for the purpose of paying a debt. The seiz-
ure in this case has no more application to the constitu-
tional section under discussion than the seizure of any
other civil attachment proceeding. The statute under
consideration has no aspect towards an attempt to secure
property by search, nor to secure evidence in aid of any
contemplated criminal prosecution. It merely affords a
remedy by attachment, as to that feature of it, for col-
lecting a debt.

The right to attach for a violation of this statute has
been upheld by this court in *Revenue Agent* v. *Johnson,*
72 Miss. 896, 17 South. 682; *Adams* v. *Evans,* 19 South.
834. The trial court was correct in retaining the injunc-
tion so as to prohibit Marion Marshall from selling or
giving away vinous or spirituous liquors in violation of
law, but erred in dismissing the attachment. The attach-
ment should have been retained and the cause heard as
to the right of the state to subject the property levied on
to the suit for the penalties.

It is the judgment of a majority of the court that, since the statute of 1910 under which this proceeding is instituted does not itself require an affidavit to be made before the issuance of an attachment, no affidavit was necessary in this suit by the state. My own view as to this is that, unless the statute excepts the state, it, like all others, must make affidavit to the facts before an attachment can issue. The statute in this case does not except the state, and it is my judgment that the chancellor did right to discharge the same.

It follows that this case is reversed on direct appeal, and affirmed on cross-appeal.

*Reversed on direct appeal.*
*Affirmed on cross-appeal.*