ALEXANDER v. STATE.

Division A. Dec. 11, 1950.

No. 37680 (49 So. (2d) 387)

Jan. 15, 1951 (49 So. (2d) 890)

518

S. R. King and Calvin R. King, for appellant.

George H. Ethridge, Assistant Attorney General, for appellee.

Ethridge, C.

This is an appeal from a conviction by the Chancery Court of Madison County, Mississippi, of appellant,

J. E. Alexander, for a constructive contempt of court for the violation of a temporary injunction. Appellant questions the sufficiency of the injunctive decree and the adequacy of the evidence to sustain the conviction.

On January 25, 1949, the State of Mississippi, by the district attorney, filed a bill of complaint in the chancery court against appellant under the authority of Section 1073 of the Mississippi Code of 1942. This statute provides, in brief, that "Any building club, vessel, boat, place or room, wherein is kept or exhibited any game or gaming table, . . . or any other kind or description of gambling devise under any other name whatever, . . . where bets or wagers are arranged for, made or settled, shall be deemed to be a common nuisance and may be abated by writ of injunction, . . .. And all rules of evidence and of practice and procedure that pertains to courts of equity generally, in this State may be invoked and applied in any injunction procedure hereunder." The Act then provides that "Upon the abatement of any such nuisance, any person found to be the owner, operator or exhibitor of any gambling device" may be required to enter into a bond that the obligor "will not violate any of the laws of Mississippi pertaining to gaming or gambling for a period of not to exceed two years from the date thereof." Failure to make such a bond shall be a contempt of court. This act was first passed as Chapter 341 of the Mississippi Laws of 1938, but has not resulted in as much controversy as have the analogous injunction statutes concerning the abatement of places in which intoxicating liquors are sold. Miss. Code of 1942, Sections 2646, 2639, 2640. All have the same salutary purposes. Relevant are many of the general injunction statutes, Code Sections 1335, 1354, 1278 and 1656, and the inherent power of the chancery court to vindicate its powers and responsibilities by contempt proceedings. Melvin v. State, Miss., 48 So. (2d) 856; Griffith, Miss. Chancery Practice, Sections 665, 670 (2d Ed. 1950).

The complaint alleged that the appellant had been and was operating within Madison County, Mississippi, a certain gambling establishment, describing it as a two-story frame building "situated about 60 feet west of U. S. Highway 51, within the Town of Ridgeland, Madison County, Mississippi, and about three-quarters of a mile north of the intersection of said Highway 51 with the main street of the Town of Ridgeland extended." It charged that appellant in the alleged gambling establishment was operating games of chance for money in violation of Mississippi laws and that it ought to be abated under Code Section 1073 as a nuisance. The complaint requested a temporary injunction issued to appellant and a permanent injunction. A temporary injunction directed to appellant was issued on the day the suit was filed, but it was set aside March 30, 1949, and is not otherwise relevant here. In the meantime, an amendment to the original bill was filed, charging that appellant since the date of the original bill had continued to conduct extensive gambling operations on the premises. On March 30th, the court, after a hearing, issued the temporary injunction, which the appellant was convicted of having violated. The court enjoined J. E. Alexander "from operating or carrying on any kind of game or gambling device or violating any of the gambling laws of this State upon the premises described in the bill of complaint, pending final hearing and determination of this cause at the May 1949 term of this court."

On September 8, 1949, the State filed a petition requesting the court to issue a citation to appellant to show cause why he should not be punished for contempt of the court. The petition charged that appellant, since the making of the temporary injunction, had willfully violated it by "gambling and permitting gaming and gambling in various forms upon the said premises described in the complaint and described in the said restraining order and injunction." Appellant filed no answer to this petition for citation. A hearing was had on

September 24th. Appellant presented no witnesses, but at the close of the testimony of the three witnesses for the State, he moved for a directed verdict asserting the evidence was insufficient to sustain a conviction. The court overruled the motion.

The chancellor, in his decree of September 24, 1949, found as a fact that appellant was "guilty of gambling and conducting gambling operations upon the premises described in the original complaint since the issuance of the said (temporary) injunction," and imposed a fine of $1,000. He allowed an interlocutory appeal from this conviction. There has not been a final hearing or decree upon the original bill of complaint.

We have considered carefully the record in this case and hold that the evidence was sufficient to sustain the chancellor's finding that appellant violated the court's temporary injunction. Two basic factual issues are involved: (1) whether gambling and gambling operations were conducted upon the premises after the temporary injunction was issued; and (2) whether appellant, individually, was guilty of gambling and conducting gambling operations upon the premises.

On the first issue the evidence supported the chancellor's finding that gambling and gambling operations were conducted upon the premises. This was testified to categorically by two witnesses for the State, Bryant and Nash. The former personally participated in gambling on the premises for the purpose of obtaining such evidence, and the latter was one of the employees at the Royal Steak House who managed one of the gambling tables.

There was also sufficient evidence to support the chancellor's finding of fact on the second issue of whether appellant, individually, was guilty of gambling and conducting gambling operations upon the premises. The testimony of the witness Bryant showed, and the chancellor was entitled to believe, that the witness went to the Royal Steak House and was assigned to table No. 42.

Appellant was present, and upon the witness asking him for his permission to go to the room in the back of the building where various persons were rolling dice, appellant gave the witness his permission. The inference was that appellant was controlling the operations in the place. About ten people were shooting dice at the table, and the witness gambled away $2. Appellant, during the gambling, was across the table at the side where the chips were, next to the croupier or man managing their table. The witness testified that appellant was the proprietor operating the entire establishment at that time. Appellant was one of two men paying off for "the house" the debts at the gambling table as participants won. During that night's gambling one of the participants in the game referred to appellant as "the boss", and stated that he would have to "watch the boss", in reply to which appellant facetiously stated, "Yes, and I might have to watch you. You might charge me double tomorrow when I come by your place." The witness further testified that when he came to the premises in question appellant asked him who he was, and upon the witness telling appellant his name, he was admitted into the building. The entire context of Bryant's testimony, which the chancellor apparently believed, was that appellant was the manager of the establishment, that every one there had considered him to be such, and that he willfully violated the injunction. The witness Nash admitted that he had worked as a stick-man or croupier at the Royal Steak House, and had handled one of the gambling tables. Nash was a very reluctant witness. He stated that he was working for a man named "J. W." but he did not know his last name. He did not know for whom he was working. Appellant filed no answer and presented no witnesses to contradict this testimony. See Griffith, Miss. Chancery Practice, Sec. 667; Vertner v. Martin, 1848, 10 Smedes & M. 103, 18 Miss. 103. The chancellor was well justified in accepting it and in finding that appellant in the establishment

in question had willfully violated the injunction of March 30, 1949.

■■ Appellant argues that the chancery court had no power to issue the temporary injunction in a proceeding under the Code Section 1073. However, that statute specifically provides that "all rules of evidence and of practice and procedure that pertains to courts of equity generally in this State may be invoked and applied in any injunction procedure hereunder." This evidences a legislative intent to grant the court the full use of all of its injunctive powers in facilitating the purposes of this statute, including Code Sections 1335-1339.

■■ It is also urged that the temporary injunction of March 30th is void because it did not describe the premises in question in the decree itself. As quoted above, the decree refers to "the premises described in the bill of complaint . . .". Although the better practice is to describe specifically the property in the decree, appellant was not misled or prejudiced by the failure to do so. He had adequate notice of the precise description of the premises by the reference in the decree to the description in the bill of complaint, which was a part of the record in the case. See 30 Am. Jur., Judgments, Sections 26, 33.

■■ Appellant also suggests that by its own terms the temporary injunction expired at the May 1949 term, and that therefore it was not operative in August 1949 when the alleged offenses were committed. The decree enjoined appellant "pending the final hearing and determination of this cause at the May 1949 term of this court." The manifest purpose of the quoted decree was to enjoin appellant until a "final hearing." Moreover, Mississipppi Code of 1942, Section 1649, abolishes discontinuances, and provides that if a matter is not heard at a term of court "then all suits and proceedings remaining undecided shall stand continued of course until the next term . . ." This statute effectuates a practical need in judicial administration. The continued

effectiveness of interlocutory judicial proceedings, until there has been a final hearing on the merits, is essential.

 ██ The appellant suggests that the proof fails to show where the alleged offense took place, and that the court cannot take judicial notice of where the Town of Ridgeland is. But the trial court was entitled to consider together all of the pleadings and the proof. The bill of complaint, the petition for citation, and the citation to appellant to show cause sufficiently described the venue of the offenses. Appellant could not have been misled as to where he was charged with disregarding the court's injunction. When the several references to Ridgeland and the ''gambling laws of Mississippi'' in the testimony are coupled with the description in the above instruments, there is adequate showing of the location of the offense.

 ██ Moreover, the court has long since held that it will take judicial notice of the location of incorporated municipalities within the State. Hill v. State, 1916, 112 Miss. 375, 73 So. 66; Holloway v. State, 1946, 199 Miss. 356, 24 So. (2d) 857. See also Caruthers v. Panola County, 1949, 205 Miss. 403, 38 So. (2d) 902. Ussery v. State, 1949, 154 Miss. 704, 123 So. 854, and Kitchens v. State, 1939, 186 Miss. 443, 191 So. 116, do not affect that result. Here the testimony referred to both the ''Town of Ridgeland'' and ''the gambling laws of the State of Mississippi,'' and hence the proof comes with the rule of these cases. In addition, ██ a contempt proceeding, even though criminal in its general nature, is sui generis, and a literal application of the Kitchens rule is not necessary in such situations. The basic criterion is whether appellant had adequate notice of the alleged offense and at where he is alleged to have committed it. The plain fact here is that he manifestly had plenary notice of those elements of his crime prior to the hearing.

(The court fined appellant $1,000 but did not impose a jail sentence. Apparently, the amount of the fine was based upon a belief that Code of 1942, Section 1069, which is in the same chapter in that Code with Chapter

341 of the Mississippi Laws of 1938, being Section 1073, was applicable in contempt proceedings for violation of an injunction under Section 1073. However, Chapter 2 of the Mississippi Code of 1942, Sections 1060-1072, apply only to a special type of injunction proceedings, involving nuisances in places of "lewdness, assignation, or prostitution", and create a special procedure and punishments for violations of injunctions applicable thereto.

Chapter 349 of the Mississippi Laws of 1938, which is Code of 1942, Section 2646, is similar in procedures and purposes to the aforesaid Chapter 341 of the Laws of 1938, now Code Section 1073. The former Act, Chapter 349, applies to places dealing in intoxicating liquors. In Pigford v. State, 1938, 184 Miss. 194, 183 So. 259, there was an appeal from a decree abating a place of business for unlawfully keeping and selling intoxicating liquors, and the trial court in addition to enjoining the nuisance enjoined the continued use of the structure for any purpose, under the impression that the prostitution-nuisance statutes were applicable to such proceedings. The Court held that the latter statutes were separate and distinct from the intoxicating liquor act, Chapter 349, Laws of 1938, that the two acts were not in pari materia, and could not be read one into the other. In Redding v. State, 1939, 184 Miss. 371, 185 So. 560, the appellant had been enjoined from operating a place in which gambling was permitted and intoxicating liquors were sold. There was no allegation that prostitution was permitted on the premises, yet the trial court followed the procedures under the latter statute. It was held that the prostitution-injunction act did not apply to procedures under either Chapters 341 or 349 of the 1938 Laws.

The placing of the present act, Chapter 341, Laws of 1938, in the same chapter with such provisions is therefore misleading. In accordance with the decision in Melvin v. State, Miss., 48 So. (2d) 856, the applicable punishment for violation of Section 1073 of the Code of

1942 is set forth in Section 2562, covering "offenses for which a penalty is not provided elsewhere by statute". In the event of a refusal of a party enjoined to obey an injunction, the court could imprison the offending party until the order is complied with, under both its inherent power to punish for contempt and under Code Sections 1278 and 1656, but the only thing that is here decided is that the punishment applicable to the particular offense in this case for the violation of the present injunction issued under Section 1073 is provided by Section 2562.

The conviction is affirmed, and for the foregoing reason the case is remanded for sentence of appellant under Section 2562, Mississippi Code of 1942.)

Affirmed and remanded.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the cause is affirmed and remanded.

ON SUGGESTION OF ERROR.

Ethridge, C.

The State filed herein a suggestion of error as to the holding in our original opinion concerning what statutory provisions are applicable to the punishment imposed on appellant. Upon further consideration of this matter, we are of the opinion that this suggestion of error should be sustained on that point. ▮▮ We are of the opinion that Mississippi Code of 1942, Sec. 2562, does not apply to the chancery court's power to punish for violation of the injunction involved in this suit, but that Code Section 1278 is the governing statute, and that the trial court's decree was correct concerning that issue. That latter statute provides that the chancery court has power "to punish any person for breach of injunction, or any other

order, decree, or process of the court, by fine or imprisonment, or both . . ." Instead of affirming and remanding the case, for punishment under Code Section 2562, as was done originally, the result is that we affirm in toto the chancery court's decree.

For the foregoing reason, the suggestion of error of the State is sustained as to the punishment imposed, and the last four full paragraphs of the original opinion herein, beginning with the clause "The Court fined appellant" etc. are deleted from that opinion, including the remand of the case, and the conviction by and judgment of the chancery court is hereby affirmed. The opinion formerly rendered is in all other respects adhered to.

Suggestion of error of state sustained and former decision modified accordingly.

PER CURIAM.

The above is hereby adopted as the decision and action of the Court.