BROOKS, et al. *v.* STATE, by ALEXANDER, et al.

Dec. 14, 1953

No. 38935          46 Adv. S. 11          68 So. 2d 461

*L. Percy Quinn, Noel Buckley,* Jackson, for appellants.

*John E. Stone,* Asst. Atty. Gen., Jackson, for appellee.

ROBERDS, P. J.

This is an appeal from a decree of the Chancery Court adjudging appellants in contempt of court for failure to execute bonds in the sum of $1,000 each conditioned to comply with a prior decree permanently enjoining appellants from selling whiskey and permitting gambling at their place of business known as Hilltop Diner located in Hinds County, Mississippi, all as provided by Sections 1073 and 2646, Miss. Code 1942.

These proceedings involved four steps in the lower court. All took place in 1952. In the first, the State, on November 7th, filed the original bill herein, charging that appellants were selling intoxicating liquors and running a gambling establishment at the Hilltop Diner, which activities constituted a nuisance, and praying the court to so adjudicate and also to issue a temporary order restraining appellants from removing the gambling equipment and liquors complainant asserted were then in said building, and for citation to appellants to appear before said chancery court to show cause why a temporary injunction should not issue restraining appellants from engaging in ·these activities at said place. On November 7th the chancellor granted the temporary restraining order prayed for in the bill, and ordered that citation issue to appellants returnable November 17th. That was done.

On November 10th appellants filed demurrers to the bill, raising certain constitutional questions, as later shown herein. On November 17th the chancellor overruled the demurrers.

The second stage of the proceedings involved the merits—whether a nuisance did in fact exist and whether the chancellor should issue a temporary injunction pro-

hibiting the claimed law violations. On November 18th appellants filed their answers denying the charged unlawful activities. On the same day they made written request for trial of the issues by a jury. The request was denied. A number of witnesses testified and on November 21st a decree was entered finding that appellants had sold and were selling whiskey and permitting gambling on said premises, which activities constituted a common nuisance, and the decree granted a temporary injunction restraining these law violations, and setting the matter for final hearing during the November Term of the court.

The third step involved the question whether or not the temporary injunction would be made permanent. The testimony given on the temporary injunction hearing was admitted by agreement and some additional evidence was introduced. On December 1st a decree was rendered making the temporary injunction permanent, and requiring each of the appellants to execute bond by 9 A. M. December 3rd in the sum of $1,000 to abide by the permanent injunction.

The following acts comprise the fourth and final step: The State filed a petition in the cause reciting the issuance of the temporary and permanent injunctions and the requirement that appellants execute bond, and their failure to do so, and prayed a decree adjudicating appellants in contempt of court. Citation was ordered, issued and served. Appellants, as defendants, plead their inability to execute the required bonds. Testimony was taken upon that question. On December 9th the chancellor rendered a decree finding the proof insufficient to justify failure of appellants to make the required bonds, and committing them to jail not to exceed two years, or until they should furnish the bonds as above required. From this decree the chancellor granted an appeal, with supersedeas, to this Court upon appellants filing in the cause a bond, which the clerk would approve,

in the sum of $1,500. The bond was given and approved and the appeal duly perfected.

██ Appellants contend on this appeal that Sections 1073 and 2646, Miss. Code 1942, under which these proceedings were had, are invalid and unconstitutional, first, because they constitute an attempt to confer upon the chancery court criminal jurisdiction, in violation of Section 159, Miss. Constitution of 1890, and, ██ second, because said sections deny to them due process of law under Article XIV of the Constitution of the United States, in that they are denied the right of trial by jury. These questions have been decided adversely to the contentions of appellants. State v. Marshall, 100 Miss. 626, 56 So. 792; Murphy v. State, 202 Miss. 890, 32 So. 2d 875; Foreman v. State, 209 Miss. 331, 46 So. 2d 794; Bishop v. Bailey, 209 Miss. 892, 48 So. 2d 588; Alexander v. State, 210 Miss. 517, 49 So. 2d 387; Green v. State, 212 Miss. 846, 56 So. 2d 12.

Appellants say the testimony did not justify the finding that whiskey was being sold and gambling permitted by them and that the activities at the Hilltop Diner constituted a nuisance. A number of witnesses testified to purchasing whiskey at that place either from appellants, or one of them, or when one, or both, was or were in charge, and also had either themselves there engaged in gambling, or had seen others so engaged. ██ The testimony amply supported the finding of the chancellor on that question of fact.

It is next said that the testimony shows that it was not possible for appellants to make the bond required by the chancellor, and, therefore, they could not be held in contempt of court under Hansbrough, et al. v. State, 193 Miss. 461, 10 So. 2d 170. That case does hold that inability to make such a bond precludes the court finding defendant in contempt for not making it—that one cannot be held in contempt for failure to do something he cannot do. The chancellor held in the case at bar ap-

pellants had not made sufficient bona fide effort to procure the required bond. The question is shall we overrule and reverse him on that finding. The problem is not without doubt but we have concluded that the circumstances here are not the same as in the Hansbrough case and that we would not be justified in reversing the finding of the chancellor. Four witnesses testified on this question—appellants, O. S. Jones and counsel for appellants. Mr. B. C. Brooks testified he had approached six persons about going his bond and they refused to do so. Two of these were wives of men who were asked to execute the bond. In effect that means he had asked four persons to go his bond. He had not tried to get a surety company to execute the bond. He said he did not have money with which to pay the premium. He admitted that on Saturday night before this hearing on Monday he had again been arrested for dealing in whiskey at Hilltop and that the persons he approached about the bond knew of that arrest.

E. B. Brooks said he was relying upon B. C. Brooks to procure the sureties and he had made no attempt to make the bond except that he spoke to two of the same parties B. C. Brooks had approached and had talked to his sister about it.

O. S. Jones, who had executed a number of appearance bonds for appellants, said B. C. Brooks approached him about signing the bond in question. Asked why he would not sign the bond he said, "Well, if it was like he said it was, I wouldn't sign it, no, sir." Asked what "they" said about the bond, he replied "If he would be caught drinking whiskey, or had some of it, in a crowd with it, I would forfeit the bond and have to pay off." It is evident this witness did not understand the nature of the bond to be executed. He thought his obligation much greater than the required bond imposed.

Counsel for appellants made a statement, in which he said he had approached two of the same persons Mr.

B. C. Brooks had asked to sign the bond, and they refused to sign the required bond after he explained to them the obligation they would be assuming. It is seen then four men, and the wives of two of them, were approached about signing the bond. At least one of these understood the nature of the obligation he was asked to sign was much greater than the obligation required by the chancellor. None of the other approached persons testified. We do not know what liability they thought they would assume if they executed the bonds. The circumstances here are different from those involved in the Hansbrough case. The opinion in that case says that Hansbrough had asked "numerous" persons to sign his bond. The original record is not available and we cannot ascertain the exact number Hansbrough did contact about signing his bond, but the word "numerous" justifies the assumption the number was considerably greater than the number approached by appellants. In addition, the chancellor, in the Hansbrough case, was of the erroneous opinion that nothing could excuse the execution of the bond—"that the law recognized no excuse for this failure."

In the Hansbrough case the bond requirement was the obligors would not violate any of the "prohibition laws of the state for a period of two years." In the case at bar the obligation was not to sell whiskey or permit gambling at the Hilltop Diner,—a much more limited liability than that imposed in the Hansbrough case. That fact becomes of special weight and importance for the reason that at this hearing appellants testified that since issuance of the decree requiring the bonds appellants had sold all their interest in the business conducted at Hilltop Diner. They said they then owned no part of it, nor did they have anything further to do with its operation. That being true the liability was certainly very limited in this case. The injunction was personal —against appellants themselves and limited to their con-

duct on the premises. If they had in fact sold to another and that other should engage in the sale of whiskey or operate a gambling establishment at Hilltop, appellants having no part therein, appellants would not be violating their bond. It is not shown by appellants that those approached by them knew these facts—knew of this very limited liability—knew appellant had no further interest in the business. Had the prospects known these facts they naturally would have more likely executed such bonds than the ones they were requested to execute.

The chancellor, in the case at bar, was in much better position than are we to determine whether appellants had made a sincere, faithful, bona fide effort to execute the bonds, and whether the effort was sufficient under the circumstances. He was on the ground. He observed the witnesses. He said in his oral opinion "The showing here made is entirely insufficient to relieve these defendants of the obligation of making these bonds, and it is the opinion of the Court that sufficient effort has not been made." We are not justified in reversing his findings.

Appellants raise other points. We have carefully examined them and do not find they constitute error.

Affirmed.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.